**UNITED STATES, Appellee,**

**v.**

**Bernard D. WATRUBA, III, Airman
U.S. Air Force, Appellant.**

No. 66,954.
ACM 28902.

U.S. Court of Military Appeals.

Argued April 9, 1992.

Decided Sept. 30, 1992.

For Appellant: *Major Alice M. Kottmyer* (argued); *Colonel Jeffrey R. Owens* and *Captain Beverly B. Knott* (on brief).

For Appellee: *Major Jeffrey C. Lindquist* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief); *Major Paul H. Blackwell, Jr.*

*Opinion of the Court*

WISS, Judge:

In a series of mixed pleas at his general court-martial comprised of a military judge alone, appellant pleaded not guilty to introducing cocaine onto a military installation between February 15 and 18, 1990. Ultimately, the military judge convicted appellant of this offense, as well as most of the others with which he was charged, and sentenced him to a bad-conduct discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished opinion.

On appellant's petition, this Court granted review to determine whether the military judge conducted an adequate inquiry of appellant incident to accepting a confessional stipulation of fact dealing with the alleged introduction of cocaine. *See United States v. Bertelson,* 3 MJ 314 (CMA 1977). Now, we conclude that she did not, so appellant's guilty pleas to this offense cannot stand.

I

The record here reflects a trial in procedural disarray. Following arraignment, Watruba pleaded, *inter alia,* guilty to divers uses of cocaine but not guilty to introduction (specification 2, Charge I) as indicated above. After advising Watruba

about the rights he would surrender in connection with his guilty pleas, the military judge asked whether there was "a stipulation of fact in this case." Trial counsel responded that there was, had it marked as a prosecution exhibit, and handed it to the military judge.

At this point, the military judge turned her attention to Watruba. She asked him whether the signature on the document was his; whether he had read it prior to signing it; and whether he "underst[ood] the Stipulation." After Watruba had responded affirmatively to these questions, the following colloquy occurred between him and the military judge:

MJ: At this time I do want to discuss the Stipulation of Fact to ensure that you do understand it and agree to how it will be used.

A Stipulation of Fact is an agreement between the trial counsel, defense counsel, and yourself that the contents of the agreement are true and if entered into evidence are the uncontradicted facts in the case. *No one can be forced to enter into a stipulation, so you should enter it only if you truly want to do so.* Do you voluntarily enter the stipulation because you feel it is in your best interest to do so?

ACC: Yes, ma'am.

\* \* \*

MJ: A stipulation of fact ordinarily cannot be contradicted. If the stipulation should be contradicted after I have *accepted your guilty plea* I would then have to *reopen the providence inquiry.* So, can you tell me at this time, is there anything in the stipulation that you disagree with or you think is not true?

ACC: No, ma'am.

MJ: Is there any objection to Prosecution Exhibit 1 for Identification?

DC: No objection, your Honor.

MJ: Prosecution Exhibit 1 for Identification, the Stipulation of Fact, will be *admitted into evidence* as Prosecution Exhibit 1.

I will take a brief recess to read over the stipulation.

(Emphasis added.)

When court reconvened 30 minutes later, the military judge conducted her providence inquiry into the specifications to which Watruba had pleaded guilty, beginning with specification 1 of Charge I, wrongful use of cocaine between February 15 and 18, 1990. *See United States v. Care,* 18 USCMA 535, 40 CMR 247 (1969). During his recitation of the facts supporting his pleas to this offense, appellant made statements that, as well, admitted the related wrongful introduction to which he had pleaded not guilty (specification 2, Charge I).

Next, the military judge turned her attention seriatim to specification 2 of Charge I, the wrongful introduction:

MJ: Now, with regard to Specification 2 of Charge I, *I realize you have entered a not guilty plea, but the stipulation essentially admits the elements of the offense* of wrongful introduction of cocaine onto a military installation. *So basically what I will do is treat it as if it were a plea of guilty and you understand that you then give up the constitutional rights I mentioned earlier—* the right to remain silent, the right to be confronted by the evidence against you—

ACC: Yes, ma'am.

MJ:—and the other one [right to trial of the facts by the court].

(Emphasis added.)

At this point, the military judge proceeded as she had promised: She informed Watruba of the elements of wrongful introduction, asked whether the "elements basically describe what happened," and asked him to "tell [her] what happened with regard to the introduction." In response, Watruba related the events in detail that, essentially, he already had expressed when discussing his guilty pleas to the related wrongful use.

After the military judge had completed her providence inquiry into the other three offenses to which appellant had pleaded guilty (specifications 3 and 4 of Charge I

and the lone specification of Charge II), she asked whether "the Government plan[ned] to proceed with evidence on the remaining charges and specifications." Trial counsel answered that he was prepared at that time to proceed with Charges III and IV and their specifications. No mention was made of specification 2 of Charge I, and no evidence subsequently was offered either by the prosecution or by the defense as to this specification. With only the stipulation of fact and appellant's responses during the "providence inquiry" before the court, the military judge entered a finding of "guilty" of wrongful introduction based on the "pleas of guilty and the evidence adduced at trial."

## II

■ This Court had occasion in *United States v. Bertelson, supra,* to consider under what circumstances a confessional stipulation—that is, "a stipulation which practically amounts to a confession," 3 MJ at 315 n.2—is admissible.[1] *Cf. United States v. Long,* 3 MJ 400 (CMA 1977). The Court concluded that, before accepting such a stipulation into evidence, the military judge must give certain advice to the accused in order to assure that the accused knowingly and intelligently waives his right not to, in effect, judicially confess to the charged crime.[2]

First, the military judge is "required to expressly communicate to the [accused] before accepting his confessional stipulation that ... it [can]not be accepted without his consent." Second, the judge must "apprise the accused ... that the Government has the burden of proving beyond a reasonable doubt every element of the offense and that by stipulating to material elements of the offense, the accused alleviates that burden." 3 MJ at 316. Third, the military judge "must also ascertain from the accused on the record that a factual basis exists for the stipulation." Finally, "[t]he trial judge also shall conduct a plea bargain inquiry in accordance with the guidelines set forth in *United States v. Green,* 1 MJ 453 (1976)." 3 MJ at 317. *See* RCM 811(c), Discussion, Manual for Courts–Martial, United States, 1984.

■ In many respects, as the military judge observed, this predicate to accepting a confessional stipulation of fact parallels the inquiry into the providence of a guilty

---

1. At the outset of Part I of her opinion, Judge Crawford suggests that *Bertelson* was "based on a clarification of a provision of the Manual for Courts–Martial, United States, 1969 (Revised edition), a dissent in a Federal case, and the 'spirit' ... and purpose of Article 45(a), Uniform Code of Military Justice, 10 USC § 845(a)." 35 MJ at 493. First, *Bertelson* quite clearly was not "based on" any provision of the 1969 Manual for Courts–Martial. Indeed, that opinion actually *overrode* paragraph 154*b*(1) of that Manual and permitted use of confessional stipulations *notwithstanding* the Manual's proscription of such use. 3 MJ at 315. Second, certainly *Bertelson* quoted from the dissenting opinion of Judge Ely in *United States v. Terrack,* 515 F.2d 558, 561–62 (9th Cir.1975). However, a reading of the majority opinion in *Bertelson* at 316–17 makes it obvious that Judge Ely's opinion was quoted simply because the majority agreed with the rationale. The true basis of *Bertelson*—and the *only* basis—was Article 45(a). The *Bertelson* majority likened a confessional stipulation to a guilty plea and determined that similar interests were involved. 3 MJ at 315 n. 2.

   Accordingly, Judge Crawford's view in her dissenting opinion that "the bases for *Bertelson* are gone," 35 MJ at 495, is puzzling. First,

   inasmuch as the Manual paragraph was not a basis for that opinion, its deletion from the 1984 Manual certainly does nothing to undermine the rationale of *Bertelson.* Second, as was just pointed out, there was only *one* basis, and that basis most surely is not "gone."

2. As Judge Crawford's dissenting opinion acknowledges, 35 MJ at 494, 495–496, the guilty-plea inquiry required under Article 45(a) and *United States v. Care,* 18 USCMA 535, 40 CMR 247 (1969), is much different from the inquiry that occurs in a United States District Court. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (federal defendant can plead guilty even while protesting his guilt, as long as the record persuasively indicates guilt). Thus, it should come as no shock that the confessional-stipulation inquiry required under *Bertelson* that is founded on Article 45(a) should differ from the stipulation inquiry conducted in District Court. Since the *Bertelson* majority correctly recognized the similarity between guilty pleas and confessional stipulations, modification of the *Bertelson*-mandated inquiry to approximate the stipulation inquiry in District Court is not logical or appropriate.

plea. Still, significant legal differences exist between, on the one hand, pleading not guilty but agreeing to a confessional stipulation and, on the other, pleading guilty. For instance, in the former case, the accused does *not* automatically waive all of the constitutional rights that are waived as a matter of law by a plea of guilty; clearly, for example, his plea of not guilty still as a matter of law requires a trial of the facts by the court. Thus, the military judge's advice here regarding Watruba's waiver of his constitutional rights was incorrect.

Additionally, the military judge did not forthrightly advise Watruba, as *Bertelson* requires, that his stipulation alleviates the burden that the Government otherwise would have to shoulder of proving every element of the offense beyond a reasonable doubt. *See also* RCM 811(c), Discussion: Prior to accepting a confessional stipulation, the judge must, *inter alia*, ensure that the accused "understands the contents *and effect of the stipulation*." (Emphasis added.) Instead, the military judge here advised Watruba that the Government *had* this burden *if* the accused pleaded *not* guilty—which is precisely how he did plead.

■ Moreover, *all* this must *precede* the military judge's acceptance of a confessional stipulation. Here, it did not. The juxtaposition was not a mere technical *faux pas* in procedure. The required order is a logical and legal imperative to assuring that the accused is fully and accurately informed of the meaning and effect of his agreement to stipulate, unburdened by the immeasurable psychological impact of having *already agreed* to the stipulation.

Under these circumstances, we cannot conclude that, as a matter of law, Watruba knowingly and voluntarily consented to the stipulation of fact. The procedural confusion that resulted from the judge's ad hoc roadmap through *Bertelson* simply was too great. Since the stipulation was the only evidence of the charged wrongful introduction, the finding as to that offense cannot stand. Additionally, inasmuch as the mili-

tary judge denied a defense motion to treat the wrongful introduction and the wrongful use as multiplicious for sentencing, we cannot conclude that there is no fair risk that the error here affected the sentence.

### III

The decision of the United States Air Force Court of Military Review is reversed as to specification 2 of Charge I and the sentence. The finding as to that specification and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing on that specification and the sentence may be ordered.

Chief Judge SULLIVAN concurs.

COX, Judge (concurring):

I agree with the principal opinion and write only to articulate my understanding of it. Appellant entered pleas of not guilty, apparently to preserve his ability to contest the issue of findings' multiplicity.* The judge proceeded to treat appellant's pleas as pleas of guilty, causing him to admit the elements of the offense to which he had pleaded not guilty. Thereafter, presumably utilizing the stipulation as with any guilty plea, she entered findings of guilty.

In the course of taking appellant's pleas, she failed to caution him that, based on his stipulation alone, the Government could apparently sustain its burden of proving him guilty of the offense (introducing drugs onto the installation). In addition, she misinformed him that he was giving up his right to remain silent and the right to be confronted by the evidence against him! Nothing could have been further from the truth in either respect.

It is possible, to be sure, that appellant came out of the deal pretty much where he (and everyone else) thought he would: He was found guilty, but he preserved his ability to challenge on appeal the specifications as being multiplicious. However, it is difficult to be certain. This was, after all, appellant's day in court, and there is a

---

* This procedure probably is unnecessary. *United States v. McMillian*, 33 MJ 257, 258 (CMA 1991), says one can challenge multiplicity for findings in a guilty-plea case.

pellucid distinction between waiving one's right to trial on the merits altogether and merely admitting the bare facts of the prosecution's *prima facie* case. On this basis, I concur.

CRAWFORD, Judge (dissenting):

The principal opinion reverses the decision below as to one offense even though none of the parties at trial disputed or objected to the finding. Appellant merely sought dismissal of the offense as a matter of law on the ground of multiplicity.[1] Based on the factual context in which the issue arose, the basis for *United States v. Bertelson*, 3 MJ 314 (CMA 1977), and the harmless-error test, I dissent from the principal opinion.

In addition to the offense to which he pleaded guilty, appellant pleaded not guilty to wrongfully introducing cocaine onto a military installation on or about February 15–18, 1990; attempting to wrongfully distribute cocaine on March 21, 1990; and failure to repair on May 22, 1990. While appellant fully contested attempting to wrongfully distribute cocaine on March 21, 1990, and the failure to repair, the only issue as to wrongfully introducing cocaine on or about February 15–18 was whether it was multiplicious for findings with wrongfully using cocaine on or about February 15, 1990.[2] Prior to the pleas, defense counsel moved that the wrongful-introduction specification (specification 2, Charge I) be dismissed as multiplicious for findings with the wrongful-use specification (specification 1, Charge I).

In addition to the facts set forth in the principal opinion and the facts relevant to the multiplicity issue, the following facts are contained in the Stipulation of Fact:

2. On 16 February 1990 the accused, Airman Teresa Rostek and a civilian named Derek went to Whiskey Smith, a bar located at 6310 Callaghan Road, San Antonio, Texas.

3. The accused gave Derek $200.00 and he went into Whiskey Smith. A short time later Derek returned to the car and gave the accused approximately 3.5 grams of cocaine. Derek then drove the accused and Airman Rostek back to their dormitories located on Randolph AFB.

4. Later that same day, 16 Feb 90, the accused and Airman Rostek went to the Comfort Inn, 200 Palisades, San Antonio, Texas and rented a room for the night. While staying at the Comfort Inn the accused and Airman Rostek consumed most of the cocaine.

5. The next day, 17 Feb 90, the accused called his friend, Derek, to give him and Airman Rostek a ride back to Randolph AFB. When Derek arrived at the Comfort Inn the three of them used some of

---

1. See analysis, *infra.* 35 MJ at 496.

2.

| Charges | Specifications | Offense | | Date Charges | Date Admitted | Plea | Finding |
|---|---|---|---|---|---|---|---|
| I | | | | | | | |
| | 1 | Wrongful use of cocaine | o/a | 15–18 Feb | 16 Feb 17 Feb | G | G |
| [Motion 1] | 2 | Introduction of cocaine | | 15–18 Feb | 16 Feb 17 Feb | NG | G |
| | 3 | Distribution of cocaine | | 24 Feb | | G | G |
| B | 4 | Possession of methamphetamines (lesser-included offense to wrongful use) | | 24 Mar | | G | G* [*MJ changed to NG finding just before sentence] |
| II | | Conspiracy to distribute cocaine | | 4 Mar | | G | G |
| III | | Attempted Wrongful Distribution | | 21 Mar | | NG | [Dismissed Motion 2] |
| IV | | Failure to repair | | 22 May | | NG | G |

the cocaine left over from the night before.

6. Derek then drove the accused and Airman Rostek back to their dormitories on Randolph AFB. Later that same evening Airman Rostek went to the accused's dormitory room where they used more of the cocaine. Afterwards they went to the Randolph AFB NCO Club.

Appellant admitted that he had read, signed, and understood the stipulation. Both counsel agreed to the stipulation. Appellant agreed that he voluntarily entered into this stipulation and agreed that the contents were true and no one forced him to enter into such a stipulation. Appellant admitted that the stipulation could be used to determine whether he was guilty and if so to determine an appropriate sentence. The judge advised appellant that a stipulation of fact ordinarily cannot be contradicted; appellant asserted there was nothing in the stipulation that he would disagree with. The Stipulation of Fact was admitted without objection. Appellant was administered an oath; and, after being personally advised of the elements of specification 1, he was advised of the elements of the wrongful-introduction offense. Appellant admitted that the elements basically described his conduct. Appellant gave a factual account of what happened which was similar to the factual account set forth in the Stipulation of Fact. Appellant was advised of the maximum punishment authorized based upon his pleas of guilty and the Stipulation of Fact. Appellant then indicated that he had enough time to discuss the case with his defense counsel and was satisfied with his defense counsel.

Other than the Stipulation of Fact, no evidence was introduced as to specification 2 of Charge I, and no argument was made because all of the parties at trial—judge, counsel, and appellant—realized that the not-guilty plea as to specification 2 of Charge I was to preserve the multiplicity issue for appeal. Other evidence introduced at trial related to Charges III and IV and their specifications to which the accused pleaded not guilty.

I

*United States v. Bertelson*, 3 MJ 314 (CMA 1977), was a 2–1 opinion by Judge Perry based on a clarification of a provision of the Manual for Courts–Martial, United States, 1969 (Revised edition), a dissent in a Federal case, and the "spirit", *id.* at 316, and purpose of Article 45(a), Uniform Code of Military Justice, 10 USC § 845(a).

Paragraph 154*b* (1), Manual, *supra*, provided that, whenever "an accused has pleaded not guilty and the plea still stands, a stipulation which practically amounts to a confession should not be received in evidence." In *Bertelson* (Part I), the majority "reject[ed] the contention that such a confessional stipulation cannot be admitted under any circumstances." 3 MJ at 315. The majority agreed that confessional stipulations ordinarily should not be admitted unless the accused consents. "If an accused and his lawyer, in their best judgment, think there is a benefit or advantage to be gained by entering otherwise objectionable evidence ... we perceive no reason why they should not be their own judges with leeway to do so." *Id.* at 315–16.

In *Bertelson* "it [was] not clear whether the accused understood that his stipulation could not ordinarily be admitted." *Id.* at 316. The judge only advised the accused that he did not have to agree to the stipulation. The majority indicated:

[W]e believe the military judge was required to expressly communicate to the appellant before accepting his confessional stipulation that under the Manual it could not be accepted without his consent.... Further the military judge was required to apprise the accused, as he did ... that the Government has the burden of proving beyond a reasonable doubt every element of the offense and that by stipulating to material elements of the offense, the accused alleviates that burden.

*Id.* at 316 (emphasis added).

The *Bertelson* Court, 3 MJ at 316, in requiring an inquiry of the type set out in *United States v. Care*, 18 USCMA 535, 40

CMR 247 (1969), "where the accused has stipulated to every criminal element charged," relied upon the "letter or the spirit of Article 45(a)" and upon a dissenting opinion by Judge Ely in *United States v. Terrack*, 515 F.2d 558, 561–62 (9th Cir. 1975).

Lastly, the *Bertelson* Court indicated that the purpose of the rules set forth was to ensure "the continued vitality of Article 45(a)." According to Judge Perry:

> To allow the Government to enter into pretrial agreements conditioned upon a stipulation (as opposed to a plea) of guilt coupled with a promise not to raise any defense or motion would utterly defeat the congressional purpose behind Article 45(a), for it would allow the Government to avoid the hurdles Congress imposed in Article 45(a) while nevertheless reaping benefits equivalent to a guilty plea.

3 MJ at 317.

In addition to the *Care* inquiry, the *Bertelson* Court set forth two more requirements: first, to "ascertain from the accused on the record that a factual basis exists for the stipulation"; and second, that "[t]he trial judge also shall conduct a plea bargain inquiry in accordance with the guidelines set forth in *United States v. Green*, 1 MJ 453." *Id.* at 317.

## A

The *Bertelson* Court's reliance on Article 45 requires a fuller discussion. In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that a defendant may constitutionally plead guilty while expressly maintaining his innocence. Article 45(a) provides, however, "If an accused … after a plea of guilty sets up matter inconsistent with the plea, … the court shall proceed as though he had pleaded not guilty."

While Article 45 on its face does not require rejection of *Alford*, the legislative history requires rejection of a plea of guilty "unless the accused admits doing the acts charged." Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 1053 (1949). Because *Alford* permits a guilty plea by an individual who claims to be innocent, RCM 910(e), Manual for Courts–Martial, United States, 1984, essentially rejects *Alford* by requiring an inquiry which elicits the "factual basis" behind the plea. Although a factual basis for a guilty plea is not constitutionally required, the purpose of Article 45 is to ensure that there is a voluntary, knowing plea of guilty consistent with the admitted facts. In this case, clearly, the letter and the spirit of Article 45 and its legislative history were met when the accused admitted in detail the facts surrounding the stipulation.

## B

The confessional-stipulation prohibition of paragraph 154(b) of the 1969 Manual, *supra*, no longer exists. RCM 811(c), 1984 Manual, *supra*, now requires only that "[b]efore accepting a stipulation in evidence, the military judge must be satisfied that the parties consent to its admission." The Drafters' Analysis to RCM 811(c) indicates that this provision "makes clear that a stipulation can be received only with the consent of the parties. This consent must be manifested in some manner before the military judge may receive the stipulation, although the rule does not specify any particular form for the manifestation, as this rests within the discretion of the trial judge."[3] RCM 811(c) does not require an inquiry, but its Discussion provides:

> concurrence in the stipulation will bind the accused. *United States v. Cambridge*, [3 USC-MA 377, 12 CMR 133 (1953)]. IF there is any doubt, the accused should be personally questioned. *See United States v. Barbeau*, 9 MJ 569 (AFCMR 1980).

Manual for Courts–Martial, United States, 1984 at A21–44.

---

3. The Analysis to RCM 811(c) further provides: Although it is normally preferable to obtain it, the express consent of the accused on the record is not always necessary for admission of a stipulation. In the absence of circumstances indicating lack of consent by the accused (*see e.g., United States v. Williams*, 30 CMR 650 (NBR 1960)), the defense counsel's

If the stipulation practically amounts to a confession to an offense to which a not guilty plea is outstanding, it may not be accepted unless the military judge ascertains: (A) from the accused that the accused understands the right not to stipulate and that the stipulation will not be accepted without the accused's consent; that the accused understands the contents and effect of the stipulation; that a factual basis exists for the stipulation; and that the accused, after consulting with counsel, consents to the stipulation; and (B) from the accused and counsel for each party whether there are any agreements between the parties in connection with the stipulation, and, if so, what the terms of such agreements are.

This Discussion is non-binding but, nevertheless, instructive.

Admittedly the inquiry in this case was not crystal clear and erroneously involved a waiver of rights. But, some of the confusion in this area arises because the Court itself indicated in *Bertelson* that there should be an inquiry similar to that in *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969).[4] *See United States v. Enlow*, 26 MJ 940, 943–44 (ACMR 1988).

4. As the Court stated:

It will be seen that the law officer [now military judge] explained that he had to determine voluntariness and providency personally and asked the accused (1) if he knew his plea subjected him to a finding of guilty without further proof; (2) if he knew he could be sentenced to the maximum sentence; (3) if he understood the meaning and effect of his plea; (4) if he knew that the burden was on the Government to prove his guilt beyond a reasonable doubt; (5) if he knew he was entitled to plead not guilty; (6) if he knew the elements of the offense; (7) if he had adequate opportunity to consult with counsel on any matters he felt necessary; (8) if he was satisfied with his counsel; (9) whether counsel advised him of the maximum punishment; (10) if the decision to negotiate a plea originated with him; (11) if his plea was given voluntarily; (12) if anyone used force or coercion to get him to enter a guilty plea; (13) if he believed it was in his best interest to plead guilty; (14) if his plea was the product of free will and a desire to confess his guilt; and (15) if he knew he could withdraw his plea. In each instance, the answer was "yes."

The procedure that was followed here fell short of the one recommended ... because

The reference to *Care* may have led to the misadvice as to the waiver of constitutional rights.[5] Absent an objection, the judge was correct in advising appellant that a Stipulation of Fact may not be contradicted. *United States v. Glazier*, 26 MJ 268 (CMA 1988).

Since 1950 and adoption of Article 45, and in fact since *Bertelson*, drastic changes have taken place in the military criminal law system so that now there is: review of summary courts-martial and special courts-martial by the Courts of Military Review [Art. 69(d), UCMJ, 10 USC § 869(d)(1989)]; direct review by the Supreme Court [Art. 67a, UCMJ, 10 USC § 867a]; independent defense counsel; the prohibition against judges being rated or reassigned based on their findings or sentence [Art. 26(c), UCMJ, 10 USC § 826(c)]; the virtual adoption of the Federal Rules of Evidence [Art. 36(a), UCMJ, 10 USC § 836(a)]; and a provision for investigation of allegations of judicial misconduct [Art. 6a, UCMJ, 10 USC § 806a].

## II

Since the bases for *Bertelson* are gone,

the law officer did not personally inform the accused of the elements constituting the offense and he did not establish the factual components of the guilty plea....

\* \* \*

[T]he record of trial ... must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge or the president has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge ... whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty....

Further, the record must also demonstrate the military trial judge ... personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea.

*Id.* at 539–41, 40 CMR at 251–53.

5. By silence and omission as to the type of inquiry, the majority has laid a trap for a military judge at trial, faced with this same situation in the future.

what rule should apply? [6] Pursuant to Article 36(a), absent a Codal or Manual rule, this Court should apply the rules generally recognized in the trial of criminal cases in the Federal district court. RCM 811(c) does not require the detailed inquiry that *Bertelson* would require. The Federal courts in interpreting Fed.R.Crim.P. 11(c) [7] do not require a detailed inquiry when there is a confessional stipulation.

In *Adams v. Peterson*, 968 F.2d 835 (9th Cir.1992) (en banc),[8] the court indicated that a Fed.R.Crim.P. 11 inquiry was not required because the defendant "never stipulated that he was guilty ... in fact, [he] pled not guilty.... [He] only stipulated that the enumerated facts were supported beyond a reasonable doubt by the *evidence* that the state ... would present at trial. A stipulation to facts from which a judge or jury may *infer* guilt is simply not the same as a stipulation to guilt." *Id.* at 839. The court went on to say that no inquiry was required because the stipulation did not constitute a plea of guilty and the defense counsel submitted a post-trial affidavit which indicated his reason for stipulating.

In *Bonilla–Romero v. United States*, 933 F.2d 86 (1st Cir.1991), the court indicated that it adopted the position of the District of Columbia Circuit and declined to require an inquiry under Fed.R.Crim.P. 11 for confessional stipulations. It did conclude, however, that, when there is a Stipulation of Fact, there should be a "colloquy with the defendant sufficient to demonstrate that the defendant has executed the stipulation freely with knowledge of the consequences of what he is doing." *Id.* at 88, quoting *United States v. Lyons*, 898 F.2d 210, 216 (1st Cir.1990). The *Bonilla* court also indicated that extrinsic factors may be relied upon in determining whether the defendant's decision to stipulate has been knowing and voluntary. Specifically, the *Bonilla* court found persuasive that the defense counsel clearly stated to the court, in the presence of the defendant and without objection by the defendant, that the decision to stipulate was part of the defendant's trial strategy. Additionally, the defendant had been questioned personally about waiving his right to a jury trial, and these responses indicated he was well informed in making the decision freely.

Returning to this case, the analysis would be different if the defense had moved for a finding of not guilty due to a lack of evidence. However, the defense did not make such a motion but moved to dismiss the offense on the grounds of multiplicity instead. The purpose of the stipulation was to preserve this dismissal motion for appeal. Additionally, there were no objections to the procedure; no indication appellant was dissatisfied with his attorney; no contradictory facts were introduced; no allegation that appellant was compelled to enter into the stipulation; and no allegation of ineffective counsel.

### III

Even if we were to apply *Bertelson* or make the Manual provision binding, the

---

**6.** By supporting *Bertelson* based upon a liberal view of Article 45(a) and a liberal dissenting opinion in a 9th Circuit case, the majority elevates individual rights to a heretofore unprecedented height.

**7.** Fed.R.Crim.P. 11 was amended in 1975 to clarify what a trial judge is required to do when accepting a plea of guilty or nolo contendere to ensure that there is a voluntary and knowing plea. Federal courts have not required precise wording or literal compliance with Fed. R.Crim.P. 11(c). As to guilty pleas, even the requirement of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), for an explicit record has been flexibly applied. *See, e.g., United States v. Ferguson*, 935 F.2d 862 (7th Cir.1991).

Even the Federal courts have shown flexibility as to the requirement to precisely inform the defendant of the three constitutional rights relinquished when accepting guilty pleas. *See, e.g., United States v. Henry*, 933 F.2d 553 (7th Cir.1991). In addition to the purpose of ensuring a knowing and voluntary waiver, these requirements in Fed.R.Crim.P. 11 were also to avoid post-plea hearings on waiver.

**8.** In response to footnote 2 of the majority opinion, I agree with the majority that this Court should not accept a confessional stipulation when the accused asserts a defense or claims innocence.

inquiry here was sufficient. The purpose of a *Bertelson*-type inquiry is to make sure that the stipulation is voluntary and knowing and that there is no factual dispute. *Cf. Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). As to whether appellant understood the right not to stipulate and consented to use of the stipulation, appellant and his counsel admitted three times that the stipulation was voluntarily entered into and was true: first, in the stipulation; second, during the multiplicity motion; and third, when the factual inquiry required under *Care* was made. From the number of times the facts were stated, defense counsel and appellant both clearly knew and understood the contents and effect of the stipulation. The facts were so intertwined with the first specification of Charge I as to ensure a knowing and voluntary agreement with the facts. Next, appellant understood and admitted the elements of the offense of wrongfully introducing cocaine. As to the *Bertelson* requirement that a plea-bargain inquiry be made, the inquiry revealed there was no pretrial agreement, so no such inquiry was required.

## IV

I disagree that this case should be remanded for a new sentencing procedure. The failure to make a *Bertelson*-type inquiry was harmless because another instance of wrongful introduction of cocaine onto a military base was set forth in the stipulation that was not charged, but could have been considered for sentencing.[9]

9. During the providence inquiry as to specification 1, Charge I, appellant admitted 2 uses of cocaine and 2 instances of wrongful introduction on February 16 and 17.

Moreover, this case is distinguishable from *Bertelson* since there was a legitimate purpose for the stipulation. This is not to suggest this was the only way to preserve the appellate issue as appellant could have entered a conditional plea, but such a plea depends upon the consent of the Government where the stipulation does not.

I would affirm the decision of the Court of Military Review.

GIERKE, Judge (dissenting):

I join in Part III of Judge Crawford's dissent. 35 MJ at 496. I believe that the military judge's inquiry was sufficient to satisfy *United States v. Bertelson*, 3 MJ 314 (CMA 1977). After reviewing the record, I have no doubt that appellant understood that the stipulation of fact, admitted in evidence in connection with his guilty pleas, was tantamount to a guilty plea to specification 2 of Charge I (wrongful introduction of cocaine). The military judge informed appellant that "the stipulation essentially admits the elements of the offense" and that she intended to "treat it as" a guilty plea. She had previously advised appellant that a guilty plea "is the strongest form of proof known to the law" and that, based solely on a guilty plea, the court could convict him "without receiving any evidence." She ascertained that there was a factual basis for the stipulation and that there was no pretrial agreement. While the *Bertelson* inquiry in this case was irregular, it covered all the essential elements. To set aside the findings of guilty in this case is to elevate form over substance. Accordingly, I dissent.