CRAWFORD, Judge
(dissenting):
Recently the Supreme Court ruled, “[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.” Bradshaw v. Stumpf 545 U.S. 175, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005). In the present case, the record of trial reads:
MJ: I take it that you talked to your attorney about accomplice liability. In other words even though you weren’t the one who actually brought them on to the military installation, that you were a party to that. Is that why you’re pleading guilty to this offense?
ACC: Yes, Sir.
MJ: Because you were knowingly involved in bringing the mushrooms on to the base?
ACC: Yes, Sir.
Under the Bradshaw standard, this constitutes a provident plea. As members of a lower court, we are bound to follow the precedent set forth by our superior court. The majority fails to do so today.
*354 FACTS
Prior to their trip to Maastricht, the Netherlands, Appellant testified that he and Airman Etzweiler met at the Noncommissioned Officers’ Club and agreed on a trip to Maastricht because drugs there were one-fourth the cost of what they were paying in and around the airbase. Appellant knew the directions to Maastricht. On the day of the trip, Etzweiler rendezvoused at Appellant’s room and then drove to Maastricht. They scouted a number of “head shops” where Etzweiler eventually purchased psilocybin mushrooms. He placed the drugs in his ear, made no effort to dispose of them, and drove back to the base with Appellant. Pursuant to their plan, they went back to the base, picked up their friends at their dormitory rooms, and then went to the festival where they used the drugs. Prior to the trip to Maastricht, Appellant admitted that they had used drugs in the dormitory room on seven or eight occasions. At the oral argument, appellate defense counsel conceded that the “overt act for introduction to mushrooms on base would be giving directions to get the mushrooms in the first place.”
Upon appeal to the Air Force Court of Criminal Appeals, Appellant challenged the providence inquiry. Specifically, Appellant argued that he did not admit aiding or abetting the wrongful introduction of psilocybin mushrooms to an armed forces installation.
DISCUSSION

Standard of Review

As stated by this Court in United States v. Prater, 32 M.J. 433 (C.M.A.1991), “rejection of the plea requires that the record of trial show a ‘substantial basis’ in law and fact for questioning a guilty plea.” Id. at 436. In considering the providence of a guilty plea, this Court has established that the entire record of the case must be considered. United States v. Johnson, 42 M.J. 443, 445 (C.A.A.F.1995).
Therefore, in the present case, the entire trial record must be examined in order to determine whether there is a “substantial basis” in law and fact for rejecting this plea. Brief Summary of Guilty Plea Jurisprudence
An examination of the jurisprudence of guilty pleas must start with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The Court in Boykin ruled, “a guilty plea is more than an admission of conduct; it is a conviction.” Id. at 242, 89 S.Ct. 1709. Furthermore, the Court indicated that because a guilty plea involves the waiver of three constitutional rights, it should be treated in the same manner as the Court treated the waiver of the right to counsel. As the Court noted, “Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.” Id. (quoting Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)). In other words, there must be evidence on the record of a guilty plea for that plea to be valid.
This Court adopted the Boykin rule into the military justice system in United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969). In Care, this Court determined the necessary elements for a voluntary guilty plea:
In any event, the record of trial ... must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge or the president has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make the basis for a determination by the military trial judge or president whether the acts or omissions of the accused constitute the offense or offense to which he is pleading guilty____
Further, the record must also demonstrate the military trial judge or president personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to trial of the facts by court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea.
18 C.M.A. at 541, 40 C.M.R. at 253 (citations omitted). Care expands upon the federal *355 standard by requiring military judges to explain more than fifteen items to the accused.*
The Care decision was codified in Rule for Courts-Martial (R.C.M.) 910. In particular, R.C.M. 910(c) reads, “Before accepting a plea of guilty, the military judge shall address the accused personally and inform the accused of, and determine that the accused understands, the following ...” The rule goes on to list things that must be reflected on the record, including the nature of the offense, the maximum and minimum penalties, the associated waiver of rights, and the offense itself. Id. There is little doubt that the drafters of the R.C.M. intended the Care requirements to be incorporated into the rules. Care is cited extensively in the analysis of R.C.M. 910(c) and R.C.M. 910(e). Manual for Courts-Martial, United States, Analysis of Rules for Courts-Martial app. 21 at A21-59 to A21-60 (2005 ed.).
There is ample support for the proposition that once a rule of ease law is adopted by Congress or is promulgated by the President, it is “codified” and that the codified iteration of the rule supplants the original case law. United States v. Lopez, 35 M.J. 35 (C.M.A.1992). Once the President creates a rule, unless it is unconstitutional, this Court is bound to follow it. United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). In United States v. Kossman, 38 M.J. 258 (C.M.A.1993), this Court ruled on the fate of United States v. Burton, 21 C.M.A. 112, 44 C.M.R. 166 (1971), a speedy trial decision that created a procedural rule where none had existed. In Kossman, this Court decided that in the wake of the adoption of R.C.M. 707, “we reiterate that the Burton presumption was court-made and declared in a procedural vacuum, without the benefit of presidential input. Just as we created it, we now reconsider it. Burton and Driver are hereby overruled.” 38 M.J. 258, 261 (C.M.A.1993). Likewise, because R.C.M. 910 is the codification of Care, it supersedes Care and is the primary authority for examining guilty pleas. Subsequent ease law should be used to interpret R.C.M. 910.
The latest decision that has had an impact on guilty plea jurisprudence is the aforementioned Bradshaw v. Stumpf. In Bradshaw, the Supreme Court ruled, “[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.” 125 S.Ct. at 2405. Thus, Bradshaw directly resolves the issue presented before us. Appellant admits on the record that he was a party to the offense because he was knowingly involved in bringing the mushrooms onto the base, which is all the Constitution requires according to this latest decision.
The admissions of guilt by Appellant’s trial defense counsel also support the providence of the plea. Bradshaw holds, “Where a defendant is represented by competent counsel, the court usually may rely on that counsel’s assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.” Id. at 2406. During the providence inquiry, the military judge gave a detailed instruction regarding aiding and abetting and recessed the court specifically to allow Appellant to confer with counsel:
MJ: So I know I’ve instructed you on quite a bit there. I’m going to give you an opportunity to talk to your counsel ____ If the theory is aiding and abetting, then I need to know from you specifically how it is that you did one of those things I instructed you on which is to encourage, counsel, command or procure, aid or abet in some way the commission of the offense .... When another person knowingly encourages the criminal by his presence and shares in a criminal purpose or activity, then that other person becomes criminally involved. So did you share the criminal intent of bringing the mushrooms back on the base?
After returning from recess, Appellant’s trial defense counsel made these statements on his behalf:
DC: I’ve talked to my client. I can tell you the theory.
*356 MJ: Okay. That would be helpful.
DC: Basically my client is guilty on the aiding theory. You were asking what act did he do to encourage the introduction.
MJ: Right.
DC: Well there’s a few acts basically,
Sir____ He knew what he was going for____ So he was going to help navigate the car. In fact he did navigate to get to Maastricht for the purpose of Etzweiler to buy drugs____
In light of the holding in Bradshaw, the military judge properly relied on these statements by Appellant’s trial defense counsel in finding the guilty plea provident.
The holding in Bradshaw has already been cited in similar cases. For example, in United States v. Kappell, 418 F.3d 550 (6th Cir. 2005), the court upheld a no-contest plea where the facts constituting the basis of the plea were not read into the trial record because defense counsel stated that the defendant understood them sufficiently. Id. at 560. See also United States v. McGlocklin, 8 F.3d 1037, 1047 (6th Cir.1993) (nolo contendere plea upheld based on defendant’s testimony that his counsel had explained the charge and that defendant had understood); Riggins v. McMackin, 935 F.2d 790 (6th Cir.1991) (plea information may be obtained from counsel rather than the trial judge); Pitts v. United States, 763 F.2d 197 (6th Cir.1985) (citing numerous other cases court held that information as to rights and voluntariness of the plea may be relayed by counsel rather than the trial judge); George v. United States, 633 F.2d 1299, 1301 (9th Cir. 1980) (in upholding plea, court found appellant had been informed of his constitutional right by defense counsel rather than the trial judge). Cf. Loving v. United States, 62 M.J. 235, 237 nn. 7 & 9 (C.A.A.F.2005) (discussing substantive application of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The present case presents a similar set of facts. Considering the technical legal language of the statement made by Appellant’s trial defense counsel concerning the distinction between aiding and abetting and co-conspirator vicarious liability, it is not unreasonable that trial defense counsel spoke on behalf of Appellant.
The Bradshaw ruling was based on a case in civilian criminal court. Judges in civilian criminal courts are charged with ensuring that a plea is voluntary by Fed.R.Crim.P. 11(b)(2). The rule states, “Before accepting a plea of guilty ... the court must address the defendant personally in open court and determine that the plea is voluntary ...” (emphasis added). This language was altered to conform to the Supreme Court’s decision in Boykin, 395 U.S. at 244, 89 S.Ct. 1709, where the Supreme Court ruled that, when accepting a guilty plea, a judge must question the defendant on the record so that “he leaves a record adequate for any review that may be later sought.” Prior to Boykin, Fed.R.Crim.P. 11 only required that the plea was made, “with understanding of the nature of the charge and the consequences of the plea.” Fed.R.Crim.P. 11 advisory committee’s note (on 1974 amendments). The postBoykin alteration of the civilian rule parallels a similar change in the military rules.
The corresponding military rule is R.C.M. 910(d), which reads, “The military judge shall not accept a plea of guilty without first, by addressing the accused personally, determining that the plea is voluntary ...” (emphasis added). As noted above, R.C.M. 910 is the codification of the ruling by this Court in Care adopting the Supreme Court’s decision in Boykin. Fed.R.Crim.P. 11 and R.C.M. 910 contain similar language, including the word “personally,” because both were crafted to adopt the Boykin decision. Therefore, just as Bradshaw interprets Fed.R.Crim.P. 11, it also can be used to interpret R.C.M. 910.
The majority has previously discounted the Bradshaw decision, implicating the narrowed standards of federal habeas corpus review. See United States v. Aleman, 62 M.J. 281, 284 n. 1 (C.A.A.F.2006). However, these review standards rarely prevent courts from following the substantive law generated by habeas cases from the Supreme Court. E.g., Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490, (1995) (interpreting Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as requiring a *357 reasonable probability of a different result to be a violation); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (interpreting Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and concluding that reliability, the key factor in identification testimony, is examined under the totality of the circumstances); Stovall, 388 U.S. at 298-301, 87 S.Ct. 1967 (rule excluding identification of suspect without counsel is not retroactive); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (Fourteenth Amendment applies the Sixth Amendment right to counsel to states who must provide attorneys to indigent defendants).
Legal Analysis — Providence of Guilty Plea
Under R.C.M. 910, a military judge cannot accept a guilty plea from an accused unless it is determined to be voluntary. R.C.M. 910(d). As interpreted by this Court, this requires:
[T]he accused must answer questions under oath in the presence of counsel that satisfy the judge that the plea is provident. RCM 910(d) and (e). The judge also must determine that the plea of guilty results from the accused’s own willingness to plead guilty and that he has not been coerced in any way.
United States v. Nelson, 51 M.J. 399, 400 (C.A.A.F.1999). A careful examination of the trial record shows that the military judge fulfilled his duty during Appellant’s providence inquiry.
Article 77, Uniform Code of Military Justice (UCMJ) (10 U.S.C. 877 (2000)), defines a “principal” as “Any person punishable under this chapter who ... commits an offense ... or aids, abets, counsels, commands, or procures its commission.” (citations omitted.) The Manual for Courts-Martial, United States (2005 ed.)(MCM) further states the two elements necessary to be held liable for aiding and abetting a crime: “(i) Assist, encourage, advise, instigate, counsel, command or procure ... another in the commission of the offense; and (ii) Share in the criminal purpose of design.” MCM pt. IV, para. l.b.(2)(b)(i)-(ii).
This Court has further clarified the requirements for aiding and abetting the wrongful introduction of controlled substances to military installations in United States v. Knudson, 14 M.J. 13 (C.M.A.1982). In Knudson, the Court stated that, “All that is necessary is to show some affirmative participation which at least encourages the principal to commit the offense in all its elements as defined by the statute.” Id. at 15. In Knudson, the appellant was found guilty of aiding and abetting the wrongful introduction of lysergic acid diethylamide (LSD) onto a military installation. The appellant aided and abetted simply by informing a buyer that the seller still had the drugs and providing a pen and paper for the buyer to leave a note to the seller. Id. at 14. The actions by Appellant in the present case are no less culpable.
Element I — The Act
Mere presence at the scene of a crime does not make one an aider and abettor. MCM pt. IV, para. l.b.(3)(b). This Court has recognized that presence with prior knowledge of the principal’s intent to commit a crime is insufficient to establish accomplice liability. United States v. Burroughs, 12 M.J. 380 (C.M.A.1982). However, in this case, merely examining presence and prior knowledge does not constitute a complete analysis.
The effect of the presence on the principal must also be examined. Courts have found that, under some circumstances, presence at a crime can be considered encouragement sufficient to constitute aiding and abetting. United States v. Dunn, 27 M.J. 624, 625 (A.F.C.M.R.1988). In Dunn, the appellant was found guilty of aiding and abetting a theft because his presence at the crime knowingly encouraged the principal and he shared in the criminal purpose. Id. The facts in the present case likewise show encouragement by presence. The evening pri- or to the trip to Maastricht, Appellant testified that Airman Etzweiler approached him regarding the trip
ACC: It was something along the lines of like well I’m going up to Maastricht tomorrow. I don’t have anybody else to go with. He knew I had been up to Eindhoven *358 which is on the same autobahn.... So I told him I could get him there and told him I know the direction and all that.
Airman Etzweiler was seeking company on his trip to Maastricht, specifically company that could direct him to Maastricht, where the drugs were. Appellant’s statement concerning “get[ting] him there” is an admission to the overt act necessary to aiding and abetting. Whether or not Appellant actually gave Airman Etzweiler directions is immaterial; his presence, as someone who could navigate to Maastricht, is encouragement.
Furthermore, Appellant’s defense counsel admitted that accompanying Airman Etzweiler to Maastricht was sufficient to constitute an overt action by Appellant for the purposes of aiding and abetting. During oral argument, Appellant’s defense counsel was asked three times about this matter by two different judges of this Court. At one point, Appellant’s defense counsel emphatically responded to these inquiries stating, “And we would concede that an overt act for introduction to mushrooms on base would be giving directions to getting the mushrooms in the first place.” The majority ignores this concession.
Element II — Intent
Appellant’s intent can be inferred from the facts and circumstances of the case. United States v. Speer, 36 M.J. 997, 1001 (A.C.M.R. 1993). The ease before us is rich in facts supporting an inference of shared intent on behalf of Appellant. Appellant knew one of the stated purposes of the trip to Maastricht was to purchase psilocybin mushrooms. Appellant accompanied Airman Etzweiler into a third “head shop” after he had completed his stated purpose for the trip to Maastricht (buying the dragon statue) and witnessed the actual purchase. These facts support an inference of Appellant’s intent to see the crime carried out.
Additionally, Appellant made no effort to prevent the purchase or introduction of the psilocybin mushrooms onto the base. This inaction can be used against Appellant to infer a shared intent. In United States v. Deason, 3 C.M.R. 391, 394 (A.B.R.1952), the court stated:
[I]f the proof shows that a person is present at the commission of a crime without disapproving or opposing it, it is competent for the jury to consider this conduct, in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent his countenance and approval and was thereby aiding and betting the same.
Thus, Appellant’s silence at the Spangdahlem entry gate can be used to infer a shared criminal intent on his part.
This Court has recognized that subsequent acts may also be used to infer prior intent. United States v. Barrett, 3 C.M.A. 294, 12 C.M.R. 50 (1953). In Barrett, this Court ruled that “Certainly an intent existing at a particular time can be inferred from other acts transpiring either before or after.” 3 C.M.A. at 297, 12 C.M.R. at 53. This principal has been consistently upheld and recognized. United States v. Pugh, 38 C.M.R. 541, 543 (A.B.R.1967); United States v. Miller, 33 C.M.R. 563, 565-66 (A.B.R.1963); United States v. Goad, 16 C.M.R 886, 893 (A.F.B.R 1954). Applied to this case, intent to introduce the psilocybin mushrooms may be inferred by Appellant’s use of those very mushrooms later that day in Trier, Germany, and again soon thereafter on Spangdahlem Air Force Base. Furthermore, both instances of use were with Airman Etzweiler. The subsequent use of the same psilocybin mushrooms introduced to Spangdahlem by Airman Etzweiler and Appellant support an inference of Appellant’s prior intent.
CONCLUSION
The military judge in this ease conducted an extensive providence inquiry. Over twenty pages of the record demonstrate the military judge took great care to fulfill constitutional and procedural standards in his inquiry. I am satisfied that these standards have been met under the latest Supreme Court precedent and would affirm the decision of the court below. For the foregoing reasons, I respectfully dissent. -

 United States v. Watruba, 35 M.J. 488, 495 n. 4 (C.M.A.1992)(Crawford, J., dissenting).