**UNITED STATES**

v.

**David A. YBARRA, Private First Class
(E–2), U.S. Marine Corps.**

NMCM 200200055.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 6 Dec. 2000.

Decided 23 Dec. 2002.

Capt James D. Valentine, USMC, Appellate Defense Counsel.

LT Clarice B. Julka, JAGC, USNR, Appellate Government Counsel.

Before PRICE, Senior Judge, CARVER
and BRYANT, Appellate Military Judges.

CARVER, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of two specifications of disrespect

to a non-commissioned officer (NCO), assault on an NCO, resisting apprehension, and two specifications of provoking words, in violation of Articles 91, 95, and 117, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 895, and 917. The appellant was sentenced to a bad-conduct discharge, confinement for 130 days, and reduction to pay grade E–1. Pursuant to a pretrial agreement, the convening authority approved the sentence as adjudged, but suspended all confinement over 110 days.

The appellant asserts that his plea of guilty to one of the specifications of provoking words was improvident as a matter of law and that the convening authority's action was premature. After carefully considering the record of trial, the appellant's assignments of error, and the Government's response, we conclude that the findings of guilty and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant was assigned to paint the company headquarters building. A fellow Marine told him to get to work. The appellant responded with a racial epithet. As a result, the First Sergeant called the appellant into his office and then directed him to stand or sit and face the wall for between two and five hours.[1] At the end of that time, the appellant's platoon sergeant, Sergeant (Sgt) Smith, approached the appellant and said to come with him. The appellant refused and walked away. Sgt Smith then directed a Navy third class petty officer and a Marine corporal to go after the appellant, apprehend him, and bring him back. The two individuals caught up with the appellant and ordered him to return to the First Sergeant's office. He again refused. When they attempted to apprehend him, he resisted. Finally, they wrestled him to the ground and placed flexicuffs on his hands and feet. He was then escorted back to the company office.

At the office, the appellant was still agitated. Sgt Wise ordered him to lie down on the deck. He refused. At the direction of a lieutenant who was in the office, Sgt Wise then swept the appellant's feet out from under him and placed him on the deck. While continuing to struggle, the appellant twice struck Sgt Wise in the groin with his knee. Since the appellant was still struggling, Sgt Wise turned the appellant face down on his stomach and placed another set of flexicuffs from the appellant's wrists to his legs, such that he was "hogtied." At about the same time, the appellant used disrespectful language toward Sgt Smith and then called Sgt Wise, who is an African–American, a "fucking nigger," giving rise to the charge of provoking words, which is the subject of the first assignment of error.

### Provoking Words

In his first assignment of error, the appellant asserts that the military judge should have rejected his plea of guilty to using provoking words toward Sgt Wise since he was handcuffed and in custody at the time. We disagree.

 A military judge shall not accept a plea of guilty without making sufficient inquiry of the accused to establish that there is a factual basis for the plea. Art. 45(a), UCMJ, 10 U.S.C. § 845(a); *United States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253, 1969 WL 6059 (1969). Before accepting a guilty plea, the military judge must explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Faircloth*, 45 M.J. 172, 174 (1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980). Mere conclusions of law recited by the accused are insufficient to provide a factual basis for a guilty plea. *United States v. Outhier*, 45 M.J. 326, 331 (1996)(citing *United States v. Terry*, 21 C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972)). The accused "must be convinced of, and able to describe all the facts necessary to establish

---

1. The appellant said he sat, facing the wall for about five hours. The First Sergeant testified that the appellant stood, facing the wall for about two to two and one-half hours. The military judge did not make findings of fact, but he found that this conduct was pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813. As a remedy, the military judge ordered three days of credit toward the sentence to confinement.

guilt." RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Discussion. To impart the seriousness of the *Care* inquiry, an accused is questioned under oath about the offenses to which he has pled guilty. R.C.M. 910(e).

 Likewise, a military judge "may not arbitrarily reject a guilty plea." *United States v. Penister*, 25 M.J. 148, 152 (C.M.A. 1987). The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). Such rejection must overcome the generally accepted waiver of the factual issue of guilt inherent in a voluntary plea of guilty. The only exception to the general rule of waiver arises when an error materially prejudicial to the substantial rights of the appellant occurs. Art. 59(a), UCMJ; R.C.M. 910(j).

The elements and explanation of the offense of provoking words, in violation of Article 117, UCMJ, are set forth in MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶¶ 42b and 42c, as follows:

b. *Elements.*

(1) That the accused wrongfully used words or gestures toward a certain person;

(2) That the words or gestures used were provoking or reproachful; and

(3) That the person toward whom the words or gestures were used was a person subject to the code.

c. *Explanation.*

(1) *In general.* As used in this article, "provoking" and "reproachful" describe those words or gestures which are used in the presence of the person to whom they are directed and which a reasonable person would expect to induce a breach of the peace under the circumstances.

The military judge accurately listed the elements and defined the terms contained in the elements. The appellant indicated a

clear understanding of the elements of the offenses and the legal definitions, and stated that the elements correctly described the offense. The military judge then discussed the offense with the appellant as follows:

MJ: All right. Let's look now at Additional Charge IV and Specification 2. This offense is an offense alleging provoking speech towards Sergeant Wise. Now did this happen close in time to what we were just talking about with Sergeant Smith?

ACC: Yes, sir.

MJ: Now, was Sergeant Wise also present when you were—when this was occurring?

ACC: At that point in time, sir, yes.

MJ: Okay. Now, you told me that you kneed Sergeant Wise repeatedly in the groin. And then after that, is that when you were referring to Sergeant Smith by his first name?

ACC: About the same time, sir.

MJ: Well, when did this offense occur?

ACC: After I was on my stomach and they hogtied me, sir.

MJ: What do you mean by that?

ACC: They took another flexicuff and Sergeant Wise had tightened the flexicuff on my wrist so they cut the flesh; and they tied my legs together.

MJ: Why do you think that they did that?

ACC: Because I was struggling back, sir.

MJ: Did they ask you to stop struggling?

ACC: Yes, they did, sir.

MJ: Do you think that what they did was necessary to keep you under control based upon how you were acting?

ACC: Yes, sir.

MJ: So tell me what happened that caused—well, let me ask you this: On the 31st of August of 2000, did you use certain words and direct them towards Sergeant Wise?

ACC: Yes, I did, sir.

MJ: What words did you say to him?

ACC: I called him a "fucking nigger," sir.

MJ: The offense alleges a little bit different language.[2] What is it that you actually said?

ACC: I believe I said—I called him a "fucking nigger," sir.

**2.** Specification 2 of Additional Charge IV specifically charged appellant as such:

In that Private First Class David A. YBARRA, U.S. Marine Corps, 6th Marine Regiment, 2d Marine Division, did, at Camp Lejeune, North Carolina, on or about 31 August 2000, wrongfully use provoking and reproachful words, to wit: "Fuck you, you nigger," or words to that effect, towards Sergeant Corray A. WISE, U.S. Marine Corps.

Charge Sheet.

MJ: Do you believe that those words are close to what the words alleged in this offense?

ACC: Yes, sir.

MJ: Why did you call him that?

ACC: I was very angry, sir.

MJ: Did he do anything to cause you to say that?

ACC: No, sir.

MJ: So I take it you said this after they had tightened up the flexicuffs?

ACC: Yes, sir.

MJ: Did he ask you to do something and that's why you responded in this way?

ACC: I was just angry and yelling, sir.

MJ: Do you believe that your words were provoking?

ACC: Yes, sir.

MJ: Why do you believe that?

ACC: My honest opinion, sir?

MJ: Yes.

ACC: It wasn't right to call somebody by that name, sir.

MJ: Did you believe that would cause a person—I take it now, Sergeant Wise is a black man?

ACC: Yes, sir.

MJ: Would you believe that they would cause a person to become turbulent and to respond with acts of violence, to get upset?

ACC: Yes. I was trying to frustrate, him, sir, because I was very frustrated, and anger him, sir [sic].

MJ: Do you believe that Sergeant Wise was acting as a Sergeant in the United States Marine Corps when this happened?

ACC: Yes, sir.

MJ: What was he specifically doing? Was he the one who tightened your flexicuffs?

ACC: Yes, sir.

MJ: Could you have avoided saying those words if you had wanted to? ·

ACC: Yes, I could have, sir.

MJ: Was this a freely-made decision on your part to say these words?

ACC: Yes, it was, sir.

MJ: And do you believe that Sergeant Wise was a member—was a person subject to the Uniform Code of Military Justice?

ACC: Yes, he was, sir.

MJ: Does either side desire any further questioning into this offense?

TC: No, sir.

DC: No, sir.

Record at 69–72. The military judge thereafter found the appellant guilty of the offense as alleged.

The appellant now asserts that he is not guilty of this offense because statements made by detainees to their custodians cannot, as a matter of law, be provocative. In support, the appellant cites *United States v. Thompson*[3] and *United States v. Shropshire*,[4] where the offenses of provoking words were set aside because the appellants were either in custody or under restraint and the victims were either trained guards or security policemen. In opposition, the Government asserts that the cases are distinguishable on their facts and that the appellant's case is more like that in *United States v. Davis*,[5] in which the offense of provoking words against a military policeman was affirmed.

In *Thompson*, the Court of Military Appeals set aside a conviction of provoking words made by a confined prisoner toward the stockade guard when he tried to get the prisoner to prepare his bunk properly. The appellant said, "Don't yell at me or I'll wring your—neck." *Thompson*, 22 C.M.A. at 89, 46 C.M.R. at 89. The Court concluded:

> In the present case, we ... concern ourselves with threatening language and gestures employed by an accused so confined in a barred and screened cell that violence could not result unless Specialist Sawin, a trained custodian, saw fit to open the door and retaliate.... The circumstances of the accused's confinement, the words used, and Sawin's attitude all dictate the conclusion that there was no reasonable tendency that the accused's words would provoke a breach of the peace.

*Thompson*, 22 C.M.A. at 90, 46 C.M.R. at 90.

In *Shropshire*, the Air Force Court of Military Review set aside a conviction for provoking words where· the drunk and disorderly appellant was already in handcuffs when a security policeman (SP) arrived. The appellant then used racially-offensive, pro-

**3.** 22 C.M.A. 88, 46 C.M.R. 88, 1972 WL 14398 (1972).

**4.** 34 M.J. 757 (A.F.C.M.R.1992).

**5.** 37 M.J. 152 (C.M.A.1993).

voking, and threatening words toward the SP. The Air Force Court of Military Review relied on *Thompson* and the unrelated case of *United States v. Shropshire*, 20 C.M.A. 374, 43 C.M.R. 214, 1971 WL 12761 (1971)(conviction for communication of a threat set aside where the confined and restrained prisoner issued a threat to the guard, conditioned upon removal of the restraining gear). The Air Force Court of Military Review concluded:

> It is not uncommon for a person under apprehension to hurl taunts at the police. The police, in turn, are specifically trained to overlook verbal abuse in such situations and to maintain professional demeanor.
>
> Evaluating a charge of provoking speech, we find it appropriate to apply a separate standard to words directed at a policeman by a handcuffed suspect under apprehension, than to the same words said to an ordinary citizen.

*Shropshire*, 34 M.J. at 758.

The Government urges us to affirm, relying upon *United States v. Davis*, in which the Court of Military Appeals affirmed a conviction for provoking words where an unrestrained accused told a military policeman (MP) "Fuck you, sergeant," and "Fuck the MPs." The MP testified that he was not upset, provoked, or enraged, because it was his duty to deal with people who are disorderly and abusive. Our superior Court concluded that the facts in *Davis* were distinguishable from those in *Thompson* and *Shropshire* (A.F.C.M.R.):

> Here, appellant was neither apprehended and handcuffed nor confined in a prison cell. We agree with the following from the Court of Military Review:
>
> > It is not necessary that the words have to be a challenge to do violence.... Insulting words can also be provoking....
> >
> > Here appellant used words that are not threatening but are nonetheless provoking and reproaching to a reasonable person because of their tendency to lead to quarrels, fights, or other disturbances.

*Davis*, 37 M.J. at 155 (quoting *United States v. Davis*, 34 M.J. 849, 851 (A.C.M.R.1992)).

In *United States v. Adams*,[6] our superior Court said:

> [I]f *Davis* implies any evidentiary rule, it is that all the circumstances surrounding the use of the words should be considered in determining their provocative nature. In this vein, we state once again that all the circumstances of a case must be considered in determining whether certain words are provoking.

*Adams*, 49 M.J. at 185 (citing *Thompson*, 22 C.M.A. at 90, 46 C.M.R. at 90).

■ We, therefore, find no blanket rule that an individual who is being restrained cannot commit the offense of provoking words toward a military authority properly exercising control over that individual. Rather, each case turns on its facts.

■ We will examine the facts and circumstances of this case. Even though his wrists and legs were bound in handcuffs, the appellant was nonetheless able to strike Sgt Wise before he was "hogtied." Then, as he was further restrained, the appellant tried to "piss ... off" and "anger ... and provoke" Sgt Smith. Record at 67. When that didn't work, he then attempted to "frustrate" and "anger" Sgt Wise by calling him a "f* * * * * * n* * * * *." Record at 72. In this case, there were no cell bars to separate and prevent violence between Sgt Wise and the appellant. Further, Sgt Wise was not a military policeman trained in dealing with disorderly personnel. As such, he would not be expected to have any special training in dealing with disorderly personnel. Fortunately, Sgt Wise exercised self-restraint and did not react to the appellant's vituperation.

The angry, taunting use of the "N" word toward an African American male, is among the vilest of all racial epithets.

> If one is called a *nigger* as opposed *to African–American*, the target is being treated at a lower level than the speaker. The language not only degrades the listener but also depersonalizes him/her as well.

---

6. 49 M.J. 182 (1998).

Such a degrading reference may lead to or instigate further verbal or physical retaliation from the target to the speaker.

TIMOTHY JAY, CURSING IN AMERICA 166–67(John Benjamins Publishing 1992).

 Further, the addition of the "F" word as an adjective was intended by the appellant to add emphasis and to further incite Sgt Wise. The essence of the offense of provoking words is whether a reasonable person would expect that the words used would induce a breach of the peace. Under the circumstances we find that a reasonable person would expect that the "fighting words" used by the appellant toward Sgt Wise, in this case, would induce a breach of the peace. Thus, we find that the plea of guilty to provoking words was provident.

### Premature Convening Authority's Action

In his second assignment of error, the appellant requests that we disapprove the bad-conduct discharge, because he was never personally served with a copy of the staff judge advocate's recommendation (SJAR) and had no opportunity to comment on it prior to the convening authority's action. We decline to do so.

At the conclusion of trial, the appellant advised the military judge that he desired that his copy of the record of trial and his copy of the SJAR be delivered personally to him instead of to the trial defense counsel. However, the record of trial and the SJAR were served instead on his substitute trial defense counsel who submitted no comments. The appellant now asserts that this was prejudicial error in violation of R.C.M. 1106(f). However, after trial, the appellant submitted a waiver of clemency in conjunction with his request for appellate leave. Further, the appellant has not indicated any errors or omissions from the SJAR that he would have brought to the attention of the convening authority had he been given the opportunity to do so. We therefore conclude that the failure to serve the SJAR personally on the appellant was not materially prejudicial to any substantial right of the appellant. Art. 59(a), UCMJ; *United States v. Wheelus,* 49 M.J. 283, 288 (1998).

Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.

Senior Judge PRICE and Judge BRYANT concur.