UNITED STATES, Appellee

v

DAVID E. CARE, Private, U. S. Marine Corps, Appellant

18 USCMA 535, 40 CMR 247

---

No. 21,983

August 29, 1969

*Captain Michael I. Walling,* USMCR, argued the cause for Appellant, Accused. With him on the brief was *Captain Frank A. Nelson,* JAGC, USN.

*Captain William S. Foss,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche,* USMC.

## Opinion of the Court

DARDEN, Judge:

The Court selected this case for a grant of review to consider again the extent to which a law officer or a president of a special court-martial must question an accused about the latter's actions and his understanding of the law applicable to these actions before accepting a guilty plea.

Private Care pleaded guilty to desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. Under the terms of a pretrial agreement, the convening authority would approve no sentence in excess of a bad-conduct discharge, total forfeitures, and confinement at hard labor for two years, compared with the maximum sentence of a dishonorable discharge, total forfeitures, and confinement at hard labor for three years. Because of the guilty plea no evidence was presented; an absence of almost fifteen months terminated by apprehension was alleged. After the findings of guilty and the sentence were approved by the board of review, this Court granted a petition for review on the issue of whether the plea of the accused was provident in view of the law officer's failure to delineate the essential elements of the offense and to determine the factual basis of the plea.

After our grant of review, the accused submitted an affidavit asserting that his counsel did not specifically explain the elements of the offense to him; that he had denied any intent to remain away permanently; that his counsel had told him a plea of not guilty would delay his trial for four months; that inevitably he would be convicted and receive the maximum sentence, but that a negotiated pretrial agreement could limit his confinement sentence to two years; that this advice resulted in his pleading guilty; and that if he were tried again he would plead not guilty.

In a reply affidavit, Care's trial defense counsel insists that although he does not recall the specific words used in the first of at least six conferences with the accused before trial, he is certain that he followed a written guide or checklist he had prepared earlier to assure that his clients were fully informed of their rights. The items on his checklist included the lawyer-client privilege; the elements of the offense; the proof needed to convict; the maximum punishment; the effect of pleas of guilty and not guilty; pretrial agreement; and related subjects. The counsel's affidavit also indicates that he informs each client of his absolute right to plead not guilty and that he should plead guilty only if he is, in fact, guilty and "did everything the Government is charging him with." The counsel denies that he told Care there was no possibility of an acquittal or that "a guilty plea would take four months longer than a not guilty." Near the end of the affidavit he affirms that Private Care informed him that Care was guilty of desertion and that he

knew the elements of the offense before he signed the pretrial agreement.

Article 45 of the Uniform Code of Military Justice, 10 USC § 845, provides, in pertinent part, that "[i]f an accused . . . after a plea of guilty sets up matter inconsistent with the plea, . . . a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." The implementing regulation in effect at the time of the plea, paragraph 70, Manual for Courts-Martial, United States, 1951, directs that a court should not accept a plea of guilty "without first determining that it is made voluntarily with understanding of the nature of the charge."

Paragraph 70*b*, Manual, supra, prescribes procedure for all cases in which a plea of guilty is entered. Among the requirements here are that (1) the plea will be received and will be treated as an interlocutory one; (2) the court may entertain such a plea only after the accused has had an opportunity to consult with the counsel he selects or the one appointed for him; and (3) the law officer must explain the meaning and effect of a plea of guilty *unless it otherwise affirmatively appears that the accused understands such meaning and effect.* This explanation must include (a) that the plea admits every act or omission alleged and every element of the offense and authorizes conviction without further proof; (b) that the maximum sentence may be adjudged; and (c) that unless the accused understands the explanation the plea will not be received. The explanation and reply will be set forth verbatim in the record.

Several rights, including that to knowledge of the meaning and effect of a plea of guilty, must be explained in open court "unless it otherwise affirmatively appears of record that the accused is aware of his rights in the premises." Paragraph 53*h*, Manual, supra.

Whether, in the absence of the law officer's open court explanation of the elements, these provisions for explanation of the meaning and effect of a

guilty plea are complied with when the accused responds that he knows the elements of the offense with which he is charged is essentially the object of our examination.

In United States v Chancelor, 16 USCMA 297, 36 CMR 453, this Court exhaustively considered the legislative background of Article 45 relating to guilty pleas and pointed out the congressional intent that the acceptance of a guilty plea be accompanied by certain safeguards to insure the providence of the plea, including a delineation of the elements of the offense charged and an admission of factual guilt on the record. The Court strongly recommended that the armed forces require a form of inquiry that would satisfy this congressional intent.

Three decisions by the Supreme Court of the United States in this term bear importantly on our decision. McCarthy v United States, 394 US 459, 22 L Ed 2d 418, 89 S Ct 1166 (1969), held that a defendant is entitled to plead anew if a United States District Court accepts a guilty plea without personally inquiring whether the defendant understood the nature of the charge. In *McCarthy*, the accused was asked only if it were true that he wished to plead guilty, if he understood that he was waiving his right to a jury trial, and if he understood the maximum punishment. During sentencing proceedings McCarthy's counsel suggested that McCarthy's failure to pay his taxes was not willful but had resulted from neglect and inadvertence traceable to his serious drinking problem. The court based its decision not on constitutional requirements but on its construction of Rule 11 of the Federal Rules of Criminal Procedure and the court's supervisory power over the lower Federal courts. Of a guilty plea, the court said in *McCarthy*:

". . . A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquish-

ment or abandonment of a known right or privilege.' Johnson v Zerbst, 304 US 458, 464, 82 L Ed 1461, 1466, 58 S Ct 1019, 146 ALR 357 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." [394 US, at page 466.]

From a constitutional standpoint, the *McCarthy* opinion reiterates that the objective of Rule 11 is to assure a defendant's guilty plea is truly voluntary. See also Machibroda v United States, 368 US 487, 7 L Ed 2d 473, 82 S Ct 510 (1962); Von Moltke v Gillies, 332 US 708, 92 L Ed 309, 68 S Ct 316 (1948); Waley v Johnston, 316 US 101, 86 L Ed 1302, 62 S Ct 964 (1942).

In a later case, Halliday v United States, 394 US 831, 833, 23 L Ed 2d 16, 89 S Ct 1498 (1969), the court declined to apply *McCarthy* retroactively "in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11."

The third of the three recent Supreme Court cases in this area is Boykin v Alabama, 395 US 238, 239, 23 L Ed 2d 274, 89 S Ct 1709 (1969). There, the court held that the Due Process Clause of the Fourteenth Amendment required the reversal of a State conviction involving a guilty plea during which "[s]o far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court."

Despite some difficulties in reconciling the constitutional aspects involved in *Boykin* and *Halliday,* we ■■■■■■■ ■ think that a plea of guilty may meet required standards if on the basis of the whole record the showing is clear that the plea was truly voluntary, even if the trial judge has not personally addressed the ac-

cused and determined that the defendant possesses an understanding of the law in relation to the facts. This is such a case.

The opinion of the Supreme Court in *Halliday* concludes significantly:

". . . In McCarthy we noted that the practice we were requiring had been previously followed by only one Circuit; that over 80% of all verdicts in the federal courts are obtained after guilty pleas; and that prior to Rule 11's recent amendment, not all district judges personally questioned defendants before accepting their guilty pleas. Thus, in view of the general application of Rule 11 in a manner inconsistent with our holding in McCarthy, and *in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11, we decline to apply McCarthy retroactively.*" [Emphasis supplied.] [394 US 831, 833.]

One might argue that the decision of the Supreme Court in *Boykin* overrules the language of *Halliday* that there are a "large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11." But we think that if on June 2 the Supreme Court were reversing its *Halliday* holding of May 5, 1969, it would have stated so forthrightly.

Appendix A is a verbatim record of the examination of Care by the law officer. It will be seen that the law officer explained that he had to determine voluntariness and providency personally and asked the accused (1) if he knew his plea subjected him to a finding of guilty without further proof; (2) if he knew he could be sentenced to the maximum sentence; (3) if he understood the meaning and effect of his plea; (4) if he knew that the burden was on the Government to prove his guilt beyond a reasonable doubt; (5) if he knew he was entitled to plead not guilty; (6) if he knew the elements of the offense; (7) if he had adequate opportunity to consult with counsel on any matters he felt necessary; (8) if

**539**

he was satisfied with his counsel; (9) whether counsel advised him of the maximum punishment; (10) if the decision to negotiate a plea originated with him; (11) if his plea was given voluntarily; (12) if anyone used force or coercion to get him to enter a guilty plea; (13) if he believed it was in his best interest to plead guilty; (14) if his plea was the product of free will and a desire to confess his guilt; and (15) if he knew he could withdraw his plea. In each instance, the answer was "yes."

The procedure that was followed here fell short of the one recommended in United States v Chancelor, ■ supra, because the law officer did not personally inform the accused of the elements constituting the offense and he did not establish the factual components of the guilty plea. That the *Chancelor* recommendation was not an inflexible requirement is shown by this Court's having denied, after *Chancelor* and before *Care,* many petitions for review of cases involving guilty plea where delineation of the elements was lacking. Taken as a whole, the evidence in this record satisfies us the accused knew what he was pleading guilty to, what he must have done for his acts to constitute desertion, and that he did, in essence, know the elements of the offense just as his acknowledgment to the law officer indicates.

The specification itself, furthermore, sets forth in simple comprehensible terms all the elements of the relatively uncomplicated offense of desertion:

"In that Private David E. CARE, U. S. Marine Corps, Support Company, Headquarters Battalion, Headquarters Regiment, Marine Corps Base, Camp Pendleton, California *did,* on or about 18 May 1967, *without proper authority and with intent to remain away therefrom permanently, absent himself from his unit,* to wit: Headquarters & Service Company, 2d Battalion, 6th Marines, 2d Marine Division, Fleet Marine Force, Camp Lejeune, North Carolina, and did remain so absent in desertion *un-*

*til apprehended* on or about 13 August 1968." [Emphasis supplied.]

This specification appears on the charge sheet, a copy of which was served on the accused. Moreover, a copy of the charge and specification was handed to the accused at the trial.

Beyond this, the elements of desertion are (1) unauthorized absence and (2) an intent to remain away permanently. Unauthorized absence is probably one of the simplest of all military offenses. It consists of being away from duty without permission. After arguing that members of the armed forces have common knowledge that they may not leave their duty without permission, the Government points out that Care "has a special claim to expertise, in that he is one of the Marine Corp's [sic] more experienced absentees. Two of Appellant's three prior convictions by courts-martial were for three separate unauthorized absences." With this history, we find it difficult to believe that Care did not know he needed permission to be away from his duty.

The second element of desertion is an intent to remain away permanently. Care was absent for about ■ fourteen months. Extraordinary duration of absence, standing alone, will not establish the intent required for a finding of desertion. United States v Cothern, 8 USCMA 158, 23 CMR 382. But when an unauthorized absence of extended duration is combined with apprehension 3,000 miles from the last duty station, an inference of an intent to remain away permanently may be drawn. United States v Montoya, 15 USCMA 210, 35 CMR 182; United States v Bonds, 6 USCMA 231, 19 CMR 357.

The affidavit of the appellant concedes that his defense counsel asked him if he intended to remain away permanently. He states further that he did not intend to remain away permanently. But in the interrogation by the law officer he responded to a question that he knew the elements of the

540

offense with which he was charged. At which point are we to believe him? United States v Boberg, 17 USCMA 401, 38 CMR 199. The affidavit of the trial counsel states his certainty that he explained the elements of the offense to the appellant. Hence, again this Court must determine controverted issues on the basis of the "blizzard of . . . affidavits" that the opinion in *Chancelor* decried.

We are satisfied that at the time of his guilty plea Private Care knew the acts and intent necessary to prove desertion and consequently that his plea was voluntary. We believe, however, that further action is required toward the objective of having court-martial records reflect fully an awareness by an accused pleading guilty of what he is admitting that he did and intended and of the law that applies to his acts and intentions.

The Court noted earlier in the opinion that its recommendation in *Chancelor* that the armed forces take remedial action to assure compliance with the requirement for inquiry into guilt-in-fact. This recommendation has received less than satisfactory implementation as is evidenced by review of many records of trial in which the law officer or the president fails to explain personally the elements of an offense and to establish factual guilt directly. Although the Manual for Courts-Martial, United States, 1969, which became effective January 1, 1969, adds the elements of the offense as one of the subjects that should be included in the explanation prescribed by paragraph 70*b* when a guilty plea is entered, we note also that the language applicable to the explanation by a law officer or a president of a court-martial of the meaning and effect of a guilty plea has been changed from "will explain" to "should explain." Perhaps this is only a stylistic change that is not intended to convert the explanation into a discretionary procedure. But we are concerned that the new Manual's Trial Procedure Guide (Appendix 8*a*), Manual for Courts-Martial, supra, still contains no suggestion for an explanation of the elements of offenses and no suggestions for questions eliciting the facts leading to a guilty plea.

In any event, the record of trial for those courts-martial convened more than thirty days after the date of this opinion must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge or the president has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge or president whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty. United States v Rinehart, 8 USCMA 402, 24 CMR 212; United States v Donohew, 18 USCMA 149, 39 CMR 149. This requirement will not be satisfied by questions such as whether the accused realizes that a guilty plea admits "every element charged and every act or omission alleged and authorizes conviction of the offense without further proof." A military trial judge or a president personally addressing the accused to explain the elements of the offense with which he is charged and to question him about his actions and omissions should feel no obligation to apologize or to disclaim any intent that his actions reflect on the competence of the accused's counsel. We believe the counsel, too, should explain the elements and determine that there is a factual basis for the plea but his having done so earlier will not relieve the military trial judge or the president of his responsibility to do so on the record.

Further, the record must also demonstrate the military trial judge or president personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea. Boykin v Alabama, supra. Based upon the foregoing inquiries and such additional interrogation as he deems neces-

541

sary, the military trial judge or president must make a finding that there is a knowing, intelligent, and conscious waiver in order to accept the plea.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I

Three years ago, this Court decided United States v Chancelor, 16 USCMA 297, 36 CMR 453. In it, we held specifically that Uniform Code of Military Justice, Article 45, 10 USC § 845, as well as Presidential regulations having the force and effect of law, required a proper inquiry to be made into an accused's guilty plea. Regarding the scope of such inquiry, we pointed out, at page 300:

". . . Unfortunately, an attempt was also made to codify the necessary inquiry into a *pro forma* advice to the accused in the Manual's Trial Procedure Guide. See Manual . . . [for Courts-Martial, United States, 1951], Appendix 8*a*, page 509. The result has been that, as in this case, accused is not advised of the elements of the offense and his guilt in fact is not always established on the record. In consequence, after the trial is concluded, the Government is faced with appellate avowals of innocence and the boards of review and this Court with the necessity to make important and binding determinations on the basis of a veritable blizzard of conflicting affidavits. *If, however, the procedure understood by the Congress to be instituted and adopted by the President in the Manual, supra, paragraph 70b, had been followed, there would have been a delineation of the elements of the offense and an express admission of factual guilt on the record. . . . Such regulations by the President—here so clearly recommended by the Congress—have the force and effect of law.* United States v Smith, 13 USCMA 105, 32 CMR 105." [Emphasis supplied.]

Having thus squarely laid down the principle, we sought to avoid future controversy in this area by strongly urging "the services to take remedial action and *insure compliance with the statutory and regulatory inquiry to be made into guilt in fact.*" (Emphasis supplied.) As the procedure was not followed in that case, we reversed and remanded for a trial on the merits.

Since that decision, the Supreme Court has adopted a similar construction of Rule 11, Federal Rules of Criminal Procedure. In so holding, it remarked in McCarthy v United States, 394 US 459, 466, 22 L Ed 2d 418, 425, 89 S Ct 1166 (1969):

". . . A defendant who enters such a plea [of guilty] simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v Zerbst, 304 US 458, 464, 82 L Ed 1461, 1466, 58 S Ct 1019, 146 ALR 357 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. *Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.*" [Emphasis supplied.]

*McCarthy,* supra, thus clearly placed the duty on Federal judges to make inquiry into accused's understanding of the nature and effect of his plea, ascertaining he knew the law regarding the offense with which he was charged, and that he, based on such knowledge, factually admitted his guilt. While this decision was in construction of Rule 11, and was made only prospective in application by the subsequent holding in Halliday v United States, 394

US 831, 23 L Ed 2d 16, 89 S Ct 1498 (1969), the problem has even more recently been pronounced to be one of constitutional dimensions. Thus, in Boykin v Alabama, 395 US 238, 23 L Ed 2d 274, 89 S Ct 1709 (1969), the Court reviewed a State conviction of robbery, based on a plea of guilty, as to which no inquiry was made but concerning the providence of which accused made no complaint on appeal, the Alabama Supreme Court on its own motion discussing the adequacy of the record to show that petitioner had intelligently and knowingly pleaded guilty. Its affirmance over the dissent of three judges went to the Supreme Court on another issue, but that body determined the question of the plea was properly before it and based reversal solely thereon.

Reiterating that a plea of guilty necessarily involves waiver of the several constitutional rights mentioned in *McCarthy*, supra, and pointing out that presuming waiver of such rights from a silent record is clearly impermissible, the Supreme Court, in language hauntingly familiar to any reader of *Chancelor*, supra, unequivocally laid down the rule that, absent a showing *on the record* that the accused intelligently and knowingly waived his rights by entering his plea, the conviction based thereon cannot stand. With unmistakable clarity, it said:

"What is at stake for an accused facing death or imprisonment demands utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought (Garner v Louisiana, 368 US 157, 173, 7 L Ed 2d 207, 219, 82 S Ct 248; Specht v Patterson, 386 US 605, 610, 18 L Ed 2d 326, 330, 87 S Ct 1209), and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

"The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that *there was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.'*" [Boykin v Alabama, supra, at page 280.] [Emphasis supplied.]

What started three years ago in *Chancelor*, supra, as a positive requirement of statute and Presidential regulation for the military courts has now metamorphosed into a matter of due process—the positive constitutional command that the *record* show an adequate inquiry into the accused's understanding of his plea, *i.e.*, that such effectively waived his constitutional rights; that he understood the elements of the offense; that he understood his plea established such elements; and that the facts accorded with them. Boykin v Alabama, supra; McCarthy v United States, supra. As *Boykin* itself notes, reversible error is present when such *record showing* is absent —and even if the accused does not complain or indicate in any way the improvidence of his plea.

## II

Turning to the instant record, it is apparent the law officer's perfunctory inquiries do not make out a conscious and knowing waiver of the accused's constitutional rights or an understanding of the meaning and effect of his plea. The questions posed to the accused elicited no factual basis for understanding, and, at best, established accused freely made the plea, without at the time understanding the nature of the charges, the punishment to which he subjected himself, or the fact that he thereby waived his rights against self-incrimination, to a trial by the military counterpart of a jury, or to confront his accusers.

Even my brothers concede there was no compliance with *Chancelor*, supra, and that to inquire of an untutored layman whether he understands the elements of the offense is inadequate, as is the failure on the law officer's part also to establish the factual basis for the plea. Lacking such inquiries, how then can it be said there is on *this*

**543**

*record* the knowing and conscious waiver required to be made out as a matter of constitutional due process or the congressionally-commanded inquiry which we declared necessitated by Code, supra, Article 45, and paragraph 70*b* of the Manual, supra? I hold that such a conclusion cannot be reached and, as in *Boykin* and *Chancelor*, both supra, the inevitable result should be reversal. I would so order.

My brothers, however, go beyond the record to find a provident plea on the basis of inferences from factors which are clearly irrelevant to the issue before us. Thus, they look to accused's previous convictions; characterize him as a sort of expert in absence without leave; and find he must have known the need to have permission to be absent. They likewise infer such information on his part from service of the charges and, finally, conclude he knew the requisite intent from his post-trial affidavit that counsel asked him whether he intended to remain absent permanently, an inquiry to which he replied in the negative.

This last bit of evidence with which the majority overcome the deficiency of the law officer exemplifies the weakness of their arguments. Not only is this post-trial affidavit not a part of the record and, hence, not properly considered as curative under *Boykin*, supra, but it serves to establish, not that accused knew the elements of the offense, but that his counsel did. The accused's unrebutted and unqualified denial of the requisite intent merely establishes the improvidence of his plea—not knowledge of the law sufficient to sustain a voluntary and knowing waiver.

So, too, do his prior convictions weigh not at all in determining the extent of his legal knowledge—that which the Supreme Court called "an understanding of the law in relation to the facts." McCarthy v United States, supra, at page 466. Factually, they indicate only that he went absent without leave before, not that he understood anything regarding the law relative thereto, or even that he then or now believed himself guilty. In short, what the majority do here is to search the record and accompanying documents in order to infer knowledge on the part of the accused which we three years ago said the record itself must establish and which, more recently, the Supreme Court said must demonstrate as a matter of constitutional due process. *Chancelor*, supra; Boykin v Alabama, supra. I prefer not to join in what can only be denominated as either the very sort of "spin-off of collateral proceedings that seek to probe murky memories" forestalled by *Boykin's* principle or as resolution of the blizzard of affidavits we sought to avoid with *Chancelor's* iteration of the statutory and Presidential rule.

I would reverse the board of review and remand the case for a rehearing.

## APPENDIX A
### OUT-OF-COURT HEARING

"The out-of-court hearing was called to order at 1411 hours, 16 October 1968.

"Present at the out-of-court hearing were the law officer, counsel for both sides, the accused, and the reporter.

"LO: Private Care, there is no intent on my part to reflect adversely upon your counsel or the advice he has given you. I must, however, determine personally the providency and voluntariness of your plea of guilty. Therefore, I am going to ask you some questions concerning your plea of guilty.

"Do you know that the burden of proof to establish your guilt beyond a reasonable doubt rests upon the Government?

"ACCUSED: Yes, sir.

"LO: Do you know you are entitled to plead not guilty?

"ACCUSED: Yes, sir.

"LO: Do you understand the meaning and effect of your plea?

"ACCUSED: Yes, sir.

"LO: Do you know that your plea subjects you to a finding of guilty without further proof?

544

"ACCUSED: Yes, sir.

"LO: And do you know that based on your plea of guilty you may be sentenced by the court to the maximum punishment authorized for it?

"ACCUSED: Yes, sir.

"LO: Do you know the elements of the offense to which you have pleaded guilty?

"ACCUSED: Yes, sir.

"LO: Now, have you had adequate opportunity to consult with your counsel prior to the date of trial and go into any matters which you feel were necessary prior to coming to trial?

"ACCUSED: Yes, sir.

"LO: Are you satisfied with your counsel?

"ACCUSED: Yes, sir.

"LO: Has your counsel advised you of the maximum punishment to which you may be sentenced?

"ACCUSED: Yes, sir.

"LO: Is there a pretrial agreement in this case?

"TC: Yes, sir, there is.

"LO: Let me see it, please.

"The trial counsel handed a document to the law officer for his examination.

"LO: Did the decision to negotiate a plea originate with you and your counsel?

"ACCUSED: Yes, sir.

"LO: Have you given your pleas of guilty voluntarily?

"ACCUSED: Yes, sir.

"LO: Was any force or coercion used upon you in an effort to get you to enter a plea of guilty?

"ACCUSED: No, sir.

"LO: Do you believe that it is in your best interest to plead guilty?

"ACCUSED: Yes, sir.

"LO: Are your pleas the product of your own free will and a desire to confess your guilt?

"ACCUSED: Yes, sir.

"LO: Are you aware that you may withdraw your plea at any time prior to the time the court announces your sentence in the case?

"ACCUSED: Yes, sir.

"LO: And you persist in your plea of guilty?

"ACCUSED: Yes, sir.

"LO: Very well, the plea will be accepted."