UNITED STATES, Appellee

v

MARC R. BERNIER, Private First Class,
U. S. Marine Corps, Appellant

20 USCMA 623, 44 CMR 53

No. 24,100

June 22, 1971

*Lieutenant Kenneth N. Beth*, JAGC, USNR, was on the pleadings for Appellant, Accused.

*Commander Michael F. Fasanaro, Jr.*, JAGC, USN, was on the pleadings for Appellee, United States.

Opinion of the Court

PER CURIAM:

The question before us is whether the accused's plea of guilty to the charge of involuntary manslaughter was provident. Under the circumstances of this case, we hold that it was not. United States v Woodrum, 20 USCMA 529, 43 CMR 369 (1971); United States v Saplala, 19 USCMA 344, 41 CMR 344 (1970), and cases cited at page 345.

During the inquiry into the providence of the plea (United States v Care, 18 USCMA 535, 40 CMR 247 (1969)), the accused informed the military judge that he had fired his weapon in the belief that he was firing at an enemy soldier. At the time of the incident, the accused explained that he and two other Marines had left their post at Landing Zone Baldy, Quang Nam Province, Vietnam, without authority, and had moved outside the regimental wire and into a nearby rice paddy. They had received word that an LP (listening post) was going to be established in front of Post #7, so they proceeded into the field in front of Post #5, one hundred and fifty yards

away, after notifying the members of Posts 5, 6, and 7, of what they were going to do. The accused continued:

". . . While we were out there a helicopter came over, put his spotlight on, so we jumped over the rice paddy dike into the rice paddy itself. The rice stand was about two and a half feet high. At that time we heard movement coming from the treeline. A few minutes later we saw a figure coming from the treeline, moving in front of us. We waited to see if it would pass without any problems so that we wouldn't be detected. The figure turned, looked at us, and then he pointed his rifle in our direction. In my opinion he was going to shoot us. That's when I shot.

"MJ: And you thought that he was an enemy at the time?

"ACC: Yes, sir, I was nearly positive it was an enemy, sir, because we heard them talking, whispering among themselves, and it sounded like the Vietnamese language, and we believed the LP to be a hundred and fifty yards to the north or further up the guard lines and these people were coming from the treeline, going toward the wire, and I didn't think the LP would be moving around at night, sir, it wasn't supposed to and I was the only one in the position to fire among the three of us. When he turned and pointed his rifle in our direction I shot."

The victim of the shooting, Lance Corporal Annis, was a member of the LP patrol. When the members of the patrol called on the radio to report the shooting, the accused and his companions recognized the call sign. "We hollered out to them to tell them who we were and then we ran back to our post." The incident occurred at night and there was no moon.

In our opinion, the accused's testimony is inconsistent with his plea of guilty to the charge of involuntary manslaughter. The military judge should at that time have inquired further of the accused and, if he persisted in his statement, the plea should have been rejected. United States v Woodrum and United States v Saplala, both supra. See also United States v Vaughn, 17 USCMA 520, 523, 38 CMR 318 (1968).

That portion of the decision of the Court of Military Review affirming the accused's conviction of involuntary manslaughter (Charge I) is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The Court of Military Review may reassess the sentence on the basis of the remaining conviction for leaving his post before being relieved (Charge II) or a rehearing may be ordered.