AYRES, Chief Judge,
concurring in part and dissenting in part:
I agree with the majority that the military judge committed reversible error in accepting appellant’s guilty plea to Specification 3 of Charge I. As stated by the majority, the overhaul of Article 120, UCMJ, in 2007 to include adding voyeurism as an indecent act was meant to limit such activity to viewing the naked and defined specific body parts enumerated in Article 120(t)(12)(A), UCMJ, or the activities described in Article 120(t)(12)(B), UCMJ. In the present case, Specification 3 of Charge I alleged the victim was “partially naked ... while she was dressing in a female shower,” the stipulation of fact states the victim was “wearing only a t-shirt and panties,” and during the inquiry the military judge failed to establish the appellant saw the victim’s genitalia, anus, but- *728 toeks, areola, or nipple. Neither the facts provided in the record nor the facts alleged in Specification 3 of Charge I are sufficient to support the guilty plea to this specification.
I concur with the majority’s disposition of Specification 2 of Charge II. Here the military judge elicited from appellant that he entered the shower room “to view females who were partially naked.” (emphasis added). Without more, the providence inquiry fails to show appellant entered the female shower room to view anyone’s genitalia, anus, buttocks, areola, or nipple, as required by Article 120(t)(12)(A), UCMJ. For that reason, I too would affirm only so much of the finding of guilt of Specification 2 of Charge II as alleged appellant “did, on or about 13 August 2009, unlawfully enter a female locker and shower room, the property of the United States Government, with intent to commit a criminal offense, to wit: a violation of Article 120, UCMJ, Indecent Exposure, therein.”
With respect to Specification 2 of Charge I and Specification 1 of Charge II, I part company with the majority’s view of facts and law. As our superior court succinctly explained in United States v. Redlinski, 58 M.J. 117 (C.A.A.F.2003):
For this Court to find a plea of guilty to be knowing and voluntary, the record of trial ‘must reflect’ that the elements of ‘each offense charged have been explained to the accused’ by the military judge. United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247 [1969 WL 6059] (1969). See Art. 45(a), UCMJ, 10 U.S.C. § 845(a) (2002); R.C.M. 910(c)(1). If the military judge fails to do so, he commits reversible error, unless ‘it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.’ United States v. Jones, 34 M.J. 270, 272 (C.M.A.1992). Rather than focusing on a technical listing of the elements of an offense, this Court looks at the context of the entire record to determine whether an accused is aware of the elements, either explicitly or inferentially. Id.; United States v. Pretlow, 13 M.J. 85, 88 (C.M.A.1982); United States v. Kilgore, 21 C.M.A. 35, 37, 44 C.M.R. 89 [1971 WL 12456] (1971).
Redlinski, 58 M.J. at 119. While the military judge failed to complete the definition of Article 120(t)(12), UCMJ, as explained by the majority, the providence inquiry satisfies me that in the context of this entire guilty plea, appellant was fully aware of each and every element of Specification 2 of Charge I and Specification 1 of Charge II, that his intent was to view, photograph, and make recordings of women who were completely naked, and as such, had the requisite intent to view their genitalia, anus, buttocks, areola, and/or nipples. It is impossible for me to infer otherwise.
Before rejecting a guilty plea during appellate review, we must be convinced that the court-martial record evidences a substantial basis in law, in fact, or both, for questioning such a plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F.2002) (citing United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)). Here appellant recounted the facts associated with his criminal behavior while exhibiting a sufficient understanding of how the elements of both Specification 2 of Charge I and Specification 1 of Charge II related to those facts. See United States v. Medina, 66 M.J. 21, 26 (C.A.A.F.2008) (citing United States v. Care, 18 U.S.C.M.A. 535, 538-39, 40 C.M.R. 247, 250-51, 1969 WL 6059 (1969)). In at least four of the thirteen recordings that form the basis for Specification 2 of Charge I, the evidence positively shows and the majority agrees that appellant could and did see and record women who were naked. Appellant’s plea of guilty, with the assistance of presumptively qualified defense counsel,[1] confirms this finding. Nothing within the record rebuts an assumption that appellant was able to take full advantage of his counsel’s advice and was able to understand how his actions related to the elements of the offenses charged.[2] The failure of appellant to recite on the record that he ob *729 served the “genitalia, anus, buttocks, and areola or nipple” of a completely naked woman of which he had a full view does not require this court to reject his plea.
Similarly, appellant’s admission during the providence inquiry to Specification 1 of Charge II that he unlawfully “entered the female shower trailer located on FOB Rusta-miyah [Iraq] ... [t]o view naked females” convinces me that his plea was knowing and with the requisite intent to commit the criminal offense of indecent act.
A determination that the victims were “naked” does not require further definition here when viewed reasonably. If the victims were “naked,” it is apparent to a reasonable mind that at least one of the enumerated body parts from the definition in Article 120(t)(12)(A), UCMJ, would have been visible. While one may argue that images in popular culture allow “naked” women to pose in such a way as to avoid displaying any of the enumerated body parts, it is crucial to note the distinction here that unwitting victims are neither static nor posed images. It is unlikely that such victims might have been able to contort their bodies in such a way as to prevent observation of the enumerated body parts, especially when unaware of appellant’s presence.
The majority’s view is that all participants in this court-martial (trial counsel, defense counsel, and military judge alike) as well as both government and defense appellate counsel in their briefs, collectively failed to adequately appreciate the necessary definitions of the offenses in Specification 2 of Charge I and Specification 1 of Charge II. I believe common sense requires, and the precedent cited in Morgan permits, a more reasonable and optimistic view of our military justice system. See Henderson v. Morgan, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The decision of the military judge, to truncate the definition as he read it, was as likely a consequence of the overwhelming nature of the evidence as a speculatively erroneous view of the law. Although I agree that a more explicit discussion of the definitions during the providence inquiry would have been helpful, in this case the overwhelming evidence included in both the stipulation of fact, as well as in the video evidence included with that stipulation, demonstrate that appellant was well-informed of the nature of the offense, thereby making his plea a “knowing” plea of guilty as required by Care. See Care, 18 U.S.C.M.A. at 541, 40 C.M.R. at 253.
Appellant’s guilty pleas to Specification 2 of Charge I and Specification 1 of Charge II were both knowing and voluntary. While I find no substantial basis to reject his plea, I would affirm only so much of Specification 2 of Charge I as finds appellant “did, at or near Forward Operating Base Rustamiyah, Baghdad, Iraq, on divers occasions between on or about 1 January 2009 and 31 January 2009, wrongfully commit indecent conduct, to wit: observing and making digital recordings of naked women while they conducted hygiene tasks and dressed in a female shower trailer.”

. See Henderson v. Morgan, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) ("it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.”).

. Appellant had a GT score of 122.