# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, ALDYKIEWICZ, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class CHRISTOPHER C. CASTLEBERRY**
**United States Army, Appellant**

ARMY 20120117

Headquarters, 82nd Airborne Division (Rear) (Provisional)
G. Bret Batdorff, Military Judge (arraignment)
James E. Hardin, Military Judge (trial)
Lieutenant Colonel Paul J. Cucuzzella, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jaired D. Stallard, JA; Captain Mathew M. Jones, JA (on brief).

For Appellee: Lieutenant Colonel James L. Varley, JA; Major Katherine S. Gowel, JA; Captain T. Campbell Warner, JA (on brief).

27 December 2013

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Senior Judge COOK:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of one specification of failing to go to his appointed place of duty and two specifications of violating a general regulation, in violation of Articles 86 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 892 (2006) [hereinafter UCMJ].[1] The convening authority approved the adjudged sentence of a bad-conduct discharge and reduction to E-4.

---

[1] As part of appellant's plea agreement, appellant pleaded not guilty and was found not guilty of Specifications 1 and 3 of Charge II, violations of Article 92, UCMJ and Charge III and its specification, a violation of Article 120, UCMJ.

This case is before us pursuant to Article 66, UCMJ. Appellant raises four assignments of error. Based on our resolution of the first assigned error, we need not address the remaining assignments of error.

## BACKGROUND

The charges appellant faced at trial were based on three separate incidents. Because the focus of our analysis will be on the second incident, we will initially and briefly discuss the third and first incidents before moving on to the second. On 15 June 2011, the appellant's First Sergeant informed appellant that he was going to be in charge of delivering food to soldiers currently involved in a field problem and in order to perform that duty, he would need to report to the Devil Dining Facility at 0615 on 16 June 2011 the next morning. Appellant failed to report for that duty. This offense was the basis for Charge I and its specification, a violation of Article 86, UCMJ.

Prior to that offense, on or about 25 February 2011, while in a temporary duty status and participating in a four-month course held at Fort Huachuca, Arizona, appellant violated a lawful general regulation[2] by wrongfully using his government travel card. Specifically, appellant used his government travel card to withdraw $60 to help another soldier pay his bar tab. This offense is the basis for Specification 2 of Charge II, a violation of Article 92, UCMJ.

Appellant challenges neither of these two convictions. It is the third offense, Specification 4 of Charge II, also charged under Article 92, UCMJ, that appellant challenges. This specification alleged:

> In that [appellant] did, at or near Fort Huachuca,
> Arizona, on or about 17 April 2011, violate a
> lawful general regulation, to wit: paragraph 4-14(b),
> Army Regulation 600-20, dated 11 February 2009,
> by wrongfully maintaining a prohibited relationship
> with Specialist [LFP].

The underlying behavior that led to this charge involved appellant's participation in a night of beer pong. Specifically, while still in a temporary duty status at Fort Huachuca, appellant and several other soldiers in appellant's course played beer pong in the game room of their shared barracks on a Sunday evening. The other soldiers who played beer pong with appellant were in the grade of either E-3 or E-4. The game consists of participants tossing ping pong balls into cups lined up on a table, and participants are required to consume beer when the other

---

[2] Paragraph 4(t)(2), 82d Airborne Division Regulation 190-2, 30 November 2010.

team scores points.  Appellant estimated that he consumed seven beers while playing beer pong that evening.

Over the course of the night, appellant took his shirt off.  Specialist (SPC) LFP, playing on the opposing team, then took his shirt off.  In addition, appellant repeatedly exposed his penis to distract SPC LFP and other male opponents.[3]  In response, SPC LFP likewise repeatedly exposed his penis to distract appellant and other opponents.  At approximately 2215, after the appellant, SPC LFP and other soldiers had been playing beer pong for over three hours, a female staff sergeant (SSG), SSG S, told appellant and SPC LFP to put their shirts back on and that it was time to stop playing beer pong because it was 15 minutes past quiet hours.  In response, SPC LFP looked at the appellant and asked whether he was going to let her "talk to a sergeant first class like that."  Staff Sergeant S then yelled at SPC LFP and while she spoke to the appellant privately, the beer pong participants left the game room.  Neither SSG S nor any other female witnessed appellant or SPC LFP exposing their penises.

## LAW AND DISCUSSION

### *Findings*

During the providence inquiry into appellant's plea of guilty to Specification 4 of Charge II, the military judge advised appellant of the elements of Article 92, UCMJ, violating a lawful regulation, as follows:

> Number one, that there was in existence a lawful general
> order or regulation.  In that it is alleged you violated a
> lawful general regulation that being:  paragraph 4-14(b)
> of Army Regulation 600-20, dated 11 February of 2009[4],
> that you had a duty to obey such regulation; and that on
> the 17th of April of 2011, that you did violate this general

---

[3] Although not entirely clear from the record, it can be safely assumed it was this exposure that led to Charge III and its specification, a violation of Article 120, UCMJ, indecent exposure.  As part of his pretrial agreement, appellant pleaded not guilty to this offense and the government agreed not to present evidence.  As a result, appellant was acquitted of this offense at trial.

[4] As pointed out by appellant's counsel, Army Regulation 600-20, Army Command Policy [hereinafter AR 600-20] was promulgated on 18 March 2008 and a Rapid Action Revision (RAR) was issued on 11 February 2009.  A later RAR was issued 27 April 2010 and would have been the applicable version to use for the charged offense.  However, the text of the applicable paragraph, 14-4(b), is identical in all three versions and appellant neither alleges prejudice nor has he been prejudiced by this issue.

regulation by wrongfully maintaining a prohibited
relationship with Specialist [LFP].

The contents of paragraph 4-14.b., AR 600-20[5] are as follows:

Relationships between soldiers of different rank are
prohibited if they:

(1) Compromise, or appear to compromise, the integrity
of supervisory authority or the chain of command.
(2) Cause actual or perceived partiality or unfairness.
(3) Involve, or appear to involve, the improper use of rank
or position for personal gain.
(4) Are, or are perceived to be, exploitive or coercive in nature.
(5) Create an actual or predictable adverse impact on discipline,
authority, morale, or the ability of the command to accomplish its
mission.

The military judge did not read this paragraph to the appellant during the
providence inquiry. When the military judge asked appellant about this offense,
appellant stated:

I engaged in a drinking game with [SPC P]. I knew about
[AR 600-20]; it is signed by a General Officer. I know
this. I have actually studied this in my tenure as a
Noncommissioned Officer. And it clearly violates the
supervisory to subordinate role. And it is inconsistent
with Senior Noncommissioned Officer duties, sir.

In response to the military judge's further questioning, appellant testified that in
addition to SPC LFP, multiple E-3s and E-4s participated in beer pong on the night
in question. After explaining the rules of beer pong to the military judge, appellant
admitted that although he consumed seven beers that night, he was still aware of his
surroundings. He further admitted that exposing his penis to two male soldiers in
order to distract them during the game was inappropriate and that he should have
corrected SPC LFP when he talked back to SSG S.

We find the plea inquiry falls far short on this charge. It is not enough to
elicit legal conclusions. The military judge must also elicit the necessary facts to
support the plea of guilty. *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F.
1996). The record of trial must reflect not only that the elements of each offense

---

[5] Because this paragraph was not made a part of the record, we take judicial notice
of it.

have been explained to the accused, but also "make clear the basis for a determination by the military trial judge . . . whether the acts or the omissions of the accused constitute the offense . . . to which he is pleading guilty." *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969). "The fundamental requirement of [a] plea inquiry under [*Care*] and [R.C.M.] 910 involves a dialogue in which the military judge poses questions about the nature of the offense and the accused provides answers and explanations that describe his personal understanding of the criminality of his or her conduct." *United States v. Medina*, 72 M.J. 148, 149 (C.A.A.F. 2013) (quoting *United States v. Hartman*, 69 M.J. 467, 469 (C.A.A.F. 2011)).

Here, appellant did not articulate which provision of AR 600-20, paragraph 4-14.b, he believed he violated. It is important to note that although appellant played beer pong with multiple junior enlisted soldiers, he was only charged with violating AR 600-20 by maintaining an improper relationship with SPC LFP. The stipulation of fact offers some illumination on this charging decision in that it states that SPC P and appellant were both permanently assigned to the same company at Fort Bragg. However, the stipulation, while silent on whether appellant had any supervisory authority over SPC LFP, does state that SPC LFP was not in appellant's chain of command and that appellant merely knew SPC LFP was in his company at his home station. If anything, the stipulation sets up a matter inconsistent with appellant's providence inquiry to the extent appellant stated that drinking with SPC LFP "clearly violates the supervisory to subordinate role." The military judge left this conflict unresolved.

Therefore, it appears that paragraph 14-4.b(1) is inapplicable because the record does not support finding appellant had supervisory or chain of command responsibility over SPC LFP either at Fort Huachuca or at Fort Bragg. Of the remaining subparagraphs under AR 600-20, paragraph 4-14.b.(5), is the only one that could be remotely triggered based on the facts of this case. However, the providence inquiry and stipulation of fact fall short in either: establishing the necessary facts to support a guilty plea; establishing whether the acts or the omissions of the accused constitute the offense to which he was pleading guilty; or establishing that appellant personally understood the criminality of his conduct. *See Outhier*, 45 M.J. at 331; *Care*, 18 U.S.C.M.A. 535, 541. *See also Medina*, 72 M.J. at 149.

Reviewing the military judge's acceptance of appellant's guilty plea for an abuse of discretion, we therefore find the minimal facts elicited here raise a substantial question regarding the appellant's guilty plea to Specification 4 of Charge II. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). As such, we will take appropriate action to set aside the findings in regards to this specification in our decretal paragraph.

*Sentence Appropriateness and Reassessment*

After findings, appellant stood convicted of three relatively minor offenses. These offenses, considering the totality of the circumstances, call into question the appropriateness of his approved punitive discharge and three-grade reduction to E-4. Our decision to set aside the most serious of the three offenses, Specification 4 of Charge II, resolves any doubt we may have had regarding sentence appropriateness because the approved sentence is now clearly inappropriate when considering the remaining findings we will affirm in our decretal paragraph.

Having found the approved sentence inappropriate, we next consider whether we can confidently reassess the sentence in light of the modified findings or whether we must order a rehearing on sentence. Considering the error noted, our superior court's guidance in *United Sates v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Winckelmann*, __ M.J. __, slip. op. at 12-13 (C.A.A.F. 18 Dec. 13), and after conducting a thorough analysis of the totality of the circumstances presented by appellant's case, we can be "reasonably certain as to the severity of the sentence that would have resulted in the absence of the error." *Sales,* 22 M.J. at 307 n. 3.

Addressing *Winckelmann's* non-exhaustive factors[6], the first, second, and fourth factors support our ability to reassess appellant's sentence. With respect to the first factor, we find that our setting aside of Specification 4 of Charge II does not result in a dramatic change in penalty landscape or exposure. Considering the second factor, appellant was sentenced by a military judge alone. Evaluating the fourth factor, the remaining offenses are the type of offense that we have the experience and familiarity with to reliably determine what sentence would have been imposed. As for the third factor, while the gravamen of the remaining offenses differs from that of the offense we set aside, the difference is not so significant as to undermine our ability to confidently reassess appellant's sentence.

---

[6] Factor 1: "[d]ramatic changes in penalty landscape and exposure"; factor 2: "[w]hether an appellant chose sentencing by members or a military judge alone"; factor 3: "[w]hether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses"; and, factor 4: "[w]hether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Winckelmann*, __ M.J. __, slip. op. at 12-13.

**CONCLUSION**

On consideration of the entire record, the finding of guilty of Specification 4, Charge II, a violation of a lawful general regulation, is set aside and that specification dismissed. The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986) and *Winckelmann*, __ M.J. __, slip. op. at 12-13, we AFFIRM only so much of the sentence as provides for reduction to the grade of E-6. We find this sentence purges the error in appellant's case and is also appropriate. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered to be restored. *See* UCMJ arts. 58b(c) and 75(a).

Judge ALDYKIEWICZ and Judge HAIGHT concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court