CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant SHAWN D. WILLIAMS**
**United States Army, Appellant**

ARMY 20140691

Headquarters, Fort Bliss
Timothy P. Hayes, Jr., Military Judge
Colonel Karen H. Carlisle, Staff Judge Advocate

For Appellant: Lieutenant Colonel Jonathan F. Potter, JA; Major Amy E. Nieman, JA; Captain Amanda R. McNeil, JA (on brief); Lieutenant Colonel Jonathan F. Potter, JA; Major Christopher D. Coleman, JA; Captain Amanda R. McNeil Williams, JA (on reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Samuel E. Landes, JA (on brief).

25 February 2016

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of eight specifications of aggravated assault, one specification of disobeying a lawful order, and six specifications of adultery in violation of Articles 128, 92, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 928, 892, and 934 (2012). The military judge sentenced appellant to a dishonorable discharge, confinement for ten years, and reduction to the grade of E-1. Consistent with a pre-trial agreement, the convening

authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for eight years, and reduction to the grade of E-1.[1]

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error requiring discussion and relief. We find the matter raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) to be without merit.

Appellant argues the military judge abused his discretion by accepting appellant's guilty plea to aggravated assault with *a means likely to produce death or grievous bodily harm.* We agree.

## BACKGROUND

Appellant pleaded guilty to eight specifications of aggravated assault with a means likely to produce death or grievous bodily harm by wrongfully engaging in vaginal intercourse with eight different women on various occasions without notifying his sexual partners that he carried the Human Immunodeficiency Virus (HIV).

During the providence inquiry, the military judge discussed the elements of aggravated assault with appellant, defining "unlawful" as well as "grievous bodily harm." The military judge stated that "[i]n evaluating the risk of the harm, the risk of death or grievous bodily harm must be more than a fanciful, speculative, or remote possibility." He further stated:

> And this was described in your stipulation of fact, where you agreed that even though . . . the risk of harm was statistically low in that, with condom use or without condom use, there is not certainly by any means a guarantee that your partner would be infected by HIV, if your partner were to be infected by HIV, the magnitude of the harm is great in that it is, potentially, a life threatening disease or injury if not treated. And, of course, the allegations are that you did not notify them of the HIV status. Therefore, they would not be seeking treatment. So, that is how that explanation of risk and magnitude of harm is applied in your case.

---

[1] The convening authority waived the automatic forfeiture of all pay and allowances for six months for the benefit of appellant's wife and two children. The convening authority also approved deferment of the adjudged reduction to E-1 until the date of action.

2

Appellant conceded that by not informing a sexual partner of his positive HIV status and not using condoms, his partner would not seek medical attention and the potential exists for the sexual partner to contract Human Immunodeficiency Virus (HIV) that can develop into Acquired Immune Deficiency Syndrome (AIDS).

## LAW AND DISCUSSION

### *Standard of Review*

We review a military judge's decision to accept a guilty plea for an abuse of discretion and review questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). A military judge can abuse his discretion if he accepts appellant's guilty plea based upon "an erroneous view of the law." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citing *Inabinette*, 66 M.J. at 322). A knowing and voluntary plea requires the military judge to explain the elements of an offense to the accused and to elicit the factual basis of the offense. *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003) (citations omitted). Failure to do so constitutes "reversible error, unless 'it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.'" *Id*. (quoting *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992)). Moreover, "[t]he providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 U.S.C.M.A. 535, 538-39, 40 C.M.R. 247, 250-51 (1969)). An accused must understand "the nature of the charges brought against him . . . ." *Id*. "[A]n accused has a right to know to what offense and under what legal theory he or she is pleading guilty." *Id*.

At the time of appellant's court-martial, the government needed to prove the risk of harm was "more than merely a fanciful, speculative, or remote possibility." *United States v. Joseph*, 37 M.J. 392, 396-97 (C.M.A. 1993) (quoting *United States v. Johnson*, 30 M.J. 53, 57 (C.M.A. 1990)). While the concepts relating to risk of harm and magnitude of harm were explained to appellant based on the law at the time of appellant's guilty plea, the law has since changed rendering appellant's plea improvident. *See United States v. Gutierrez*, 74 M.J. 61 (C.A.A.F. 2015).

In *Gutierrez*, for purposes of HIV cases, the Court of Appeals for the Armed Forces (C.A.A.F.) expressly rejected that "the risk must be more than 'fanciful, speculative, or remote.'" *Id*. at 66. Our superior court found this standard inconsistent with the statutory language of Article 128, UCMJ. *Id*. Instead, "[t]he ultimate standard, however, remains whether . . . the charged conduct was 'likely' to bring about grievous bodily harm." *Id*. at 66. The same language rejected by C.A.A.F. in *Gutierrez* is the language used in this case. We, therefore, find a

3

substantial basis in law and fact to question appellant's guilty plea to eight[2] of the charged aggravated assaults.

That said, our superior court in *Gutierrez* signaled that while an accused may not be guilty of aggravated assault with a means likely to cause death or grievous bodily harm when the risk is only more than fanciful or speculative, an accused who has sex with a victim without telling them their HIV status is guilty of assault consummated by battery. *United States v. Gutierrez*, 74 M.J. 61, 66-68 (C.A.A.F. 2015); *See also United States v. Pinkela*, 75 M.J. __ (C.A.A.F. 4 Nov. 2015) (summ. disp.).

In this case, while appellant's pleas of guilty to aggravated assault may not have been provident, he was provident to the lesser included offense of assault consummated by battery.[3] Appellant both agreed and stipulated to the fact that the sexual intercourse was an offensive touching of each victim's body because each did not know of his positive HIV status and thus, did not provide informed consent. Appellant also stipulated that his victims, except his wife, would not have consented to have sex with him if they had been informed of his HIV status. Thus, in accordance with *Gutierrez* and *Pinkela,* appellant is guilty of the lesser included offense of assault consummated by battery.

*Sentence Reassessment*

This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.A.A.F. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors:

> (1) Dramatic changes in the penalty landscape and exposure.
>
> (2) Whether an appellant chose sentencing by members or a military judge alone. As a matter of logic, judges of the courts of criminal appeals are more likely to be certain of

---

[2] Corrected

[3] We note, the provision in appellant's pretrial agreement providing that the government may withdraw from the agreement "if findings are set aside because a plea of guilty entered pursuant to this agreement is held improvident on appellate review," has no legal effect. We also find appellate government counsel's attempted "waiver" of withdrawal pursuant to this pretrial agreement provision is similarly ineffectual.

what a military judge would have done as opposed to
members. This factor could become more relevant where
charges address service custom, service discrediting conduct
or conduct unbecoming.

(3) Whether the nature of the remaining offenses capture the
gravamen of criminal conduct included within the original
offenses and, in related manner, whether significant or
aggravating circumstances addressed at the court-martial
remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type that
judges of the courts of criminal appeals should have the
experience and familiarity with to reliably determine what
sentence would have been imposed at trial.

*United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) (internal citations
omitted).

Applying these factors to this case, we are confident that reassessment is
appropriate.  First, we look to the penalty landscape.  Appellant's confinement
exposure is reduced from thirty years and six months to ten years and six months.
Second, appellant was sentenced by a military judge.  We are confident we can
discern what punishment a military judge would adjudge in this case.  Third, the
gravamen of the criminal conduct included within the original offenses remains the
same.  He is convicted of eight specifications of assault consummated by a battery
by wrongfully engaging in vaginal intercourse with eight women without first
notifying them that he was infected with the Human Immunodeficiency Virus, one
specification of disobeying a lawful order, and six specifications of adultery.
Lastly, we have familiarity and experience with the remaining offenses to reliably
determine what sentence would have been imposed at trial.

As acknowledged by the government, while the maximum confinement has
changed from thirty years and six months to ten years and six months, the remainder
of the factors "compellingly weigh in favor of reassessment."  Further, the
government *urges* this court to reassess.  We agree and are confident we are able to
reassess the sentence in this case.

## CONCLUSION

On consideration of the entire record, the court affirms only so much of
Specifications 1-8 of Charge I as follows:

Specification 1: In that [appellant], U.S. Army, did, between on
or about 6 February 2009 and on or about 7 August 2011, on

divers occasions, at or near Augusta, Georgia, commit an assault upon L.C.B., to wit: wrongfully engaging in vaginal intercourse with L.C.B. without first notifying her that he was infected with the Human Immunodeficiency Virus.

Specification 2: In that [appellant], U.S. Army, did, between on or about 6 February 2009 and on or about 31 December 2009, at or near Sims, North Carolina, commit an assault upon J.S., to wit: wrongfully engaging in vaginal intercourse with J.S. without first notifying her that he was infected with the Human Immunodeficiency Virus.

Specification 3:  In that [appellant], U.S. Army, did, between on or about 3 September 2009 and on or about 1 August 2012, on divers occasions, at or near Richmond, Virginia; Goldsboro, North Carolina; Melbourne, Florida; Norfolk, Virginia; and El Paso, Texas, commit an assault upon S.W., to wit: wrongfully engaging in vaginal intercourse with S.W. without first notifying her that he was infected with the Human Immunodeficiency Virus.

Specification 4:  In that [appellant], U.S. Army, did, between on or about 1 October 2009 and on or about 1 October 2010, on divers occasions, at or near Monroe, Georgia, commit an assault upon K.C., to wit: wrongfully engaging in vaginal intercourse with K.C. without first notifying her that he was infected with the Human Immunodeficiency Virus.

Specification 5:  In that [appellant], U.S. Army, did, between on or about 1 January 2010 and on or about 31 December 2012, on divers occasions, at or near Augusta, Georgia, commit an assault upon A.C., to wit: wrongfully engaging in vaginal intercourse with A.C. without first notifying her that he was infected with the Human Immunodeficiency Virus.

Specification 6:  In that [appellant], U.S. Army, did, between on or about 1 October 2011 and on or about 31 October 2011, at or near Smithfield, North Carolina, commit an assault upon B.P., to wit: wrongfully engaging in vaginal intercourse with B.P. without first notifying her that he was infected with the Human Immunodeficiency Virus.

6

Specification 7: In that [appellant], U.S. Army, did, between on or about 1 April 2012 and on or about 30 April 2012, at or near El Paso, Texas, commit an assault upon N.W., to wit: wrongfully engaging in vaginal intercourse with N.W. without first notifying her that he was infected with the Human Immunodeficiency Virus.

Specification 8: In that [appellant], U.S. Army, did, between on or about 1 June 2012 and on or about 31 July 2012, at or near El Paso, Texas, commit an assault upon P.D., to wit: wrongfully engaging in vaginal intercourse with P.D. without first notifying her that he was infected with the Human Immunodeficiency Virus.

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, the entire record, and in accordance with the principles of *Winckelmann*, 73 M.J. at 15-16, we affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for three years, and a reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court